Grace DeFAZIO, an infant, by her Guardian ad Litem Rita DeFazio, and Rita DeFazio and Joseph DeFazio, Plaintiffs,

v.

Sandra WRIGHT, Jack Wright, Margaret Wright, Robert Sarlitt, etc., et al., Defendants.

Civ. A. No. 591–63.

United States District Court
D. New Jersey.
May 12, 1964.

112

Sidney C. Swirsky, Newark, N. J., for plaintiffs.

Lamb, Blake, Hutchinson & Dunne, by Paul B. Thompson, Jersey City, N. J., for defendants Wright.

WORTENDYKE, District Judge.

This is a diversity action for damages alleged to have been sustained by Grace DeFazio on July 29, 1961 while riding in a motor boat operated by the defendant Sandra Wright upon the waters of Budd Lake in the State of New Jersey, as a result of a collision involving that boat and another operated by the defendant Robert Sarlitt, Jr. The complaint alleges that the plaintiffs are residents of the State of New York and that the defendants are residents of the State of New Jersey. It is also alleged that the amount in controversy exceeds the jurisdictional minimum and that the boat, which Sandra Wright was operating at the time of the occurrence complained of, was owned by her parents, the defendants Jack Wright and/or Margaret Wright. The complaint was not filed until July 19, 1963, almost two years after the accident. Summons issued on July 22 but, as will be disclosed below, was not served until December of that year.

The defendant Jack Wright and the defendants Sarlitt have duly appeared and filed answers. Jack's answer denied the alleged New Jersey citizenship of Sandra and Margaret Wright. He thereafter moved this Court to quash the service of summons upon Sandra Wright and Margaret Wright. Subsequently the same attorneys who appeared for Jack Wright noticed a motion in behalf of Sandra and Margaret to quash the service of summons upon them, basing that motion upon the same affidavit upon which Jack Wright had based his motion in behalf of Sandra and Margaret.

The Marshal's return discloses that the original summons and a copy of the complaint were served upon Margaret and Sandra Wright, respectively, on December 26, 1963, by handing to and leaving a true and correct copy thereof with Jack Wright personally, as husband of Margaret and father of Sandra, in Montclair, New Jersey.

In his affidavit in support of his motion to quash the service upon Sandra and Margaret Wright, dated January 15, 1964, Jack Wright disclosed that he resided in New Jersey, that he is married to Margaret Wright and that he has a daughter, Sandra Wright, as a result of said marriage. He further deposed that, as of that date, he had been separated from his wife, Margaret, for the then past four months, during which she did not reside with him nor have her usual place of abode at his residence. His affidavit further disclosed that Margaret Wright is a resident of Scot Run, Pennsylvania, where she maintains her usual place of abode, and that their daughter, Sandra, who is 17 years old, resides with her and attends school at the same place. The affidavit adds that it was made by reason of the fact that the summons and complaint was served upon Jack Wright for Margaret Wright and for Sandra Wright.

Following the filing of the affidavit of Jack Wright, an associate of the attorney for the plaintiffs filed an affidavit in the case which disclosed that he had made diligent efforts to locate the residence of Sandra Wright and Margaret Wright within the State of New Jersey without success but had ascertained that their last known address in New Jersey was at 15 Center Street, Budd Lake. Based upon the affidavit of Jack Wright, the deponent averred that the correct mailing address of Sandra and Margaret Wright is Scot Run, Pennsylvania. Accordingly, the attorney for the plaintiffs procured an

alias summons, the return of which shows that, on February 3, 1964, the Marshal served said alias summons, with a copy of the complaint, upon Miss Sandra Wright and upon Mrs. Margaret Wright, via registered mail, return receipt requested, addressed to them at Scot Run, Pennsylvania. The return receipts indicate that each of the addressees received her copy of the summons and complaint.

For the purpose of amplifying the record respecting the circumstances underlying the questions raised by the motions to quash service, the Court ordered the parties between whom the issue was raised to show cause why the motions should not prevail, and, upon return of that order, heard the testimony of the defendants Wright relevant thereto. That testimony disclosed the following.

From May of 1961 through July of 1963, all three members of the Wright family, Jack, Margaret and Sandra (and a son who is not a party to this action) resided together in New Jersey. On the date of the accident, July 29, 1961, the motor boat, which was owned by the parents and which allegedly caused the accident, was being operated on the waters of Budd Lake in New Jersey by Sandra Wright, who was then about 14 years old. The boat was kept by the parents in Budd Lake for the entire summer of 1961.

Margaret Wright testified that she left the State of New Jersey and separated from her husband in "the latter part of July [1963] * * * possibly the 25th, 29th, some place in there" and took up residence in Scot Run, Pennsylvania, taking her daughter Sandra, and their son, with her. The complaint in this action had been filed on July 19, and summons had issued on July 22. Margaret and her husband reunited in March, 1964, at the Pennsylvania address where they have since resided with their son and daughter, as one household.

The husband, Jack Wright, was personally served with the summons and complaint on December 26, 1963, in Montclair, New Jersey, where he was working at a construction site. At the same time, he was served by the Marshal with copies

for Margaret and Sandra, which he turned over to an insurance agent three or four days later. The personal service of the summons upon Jack Wright was, therefore, not effected at his then usual place of abode (despite the recital in his affidavit to the contrary).

These motions present three questions: (1) Can Jack Wright, who concededly was personally served with the original summons, be heard to attack the service of either the original or the alias summons upon his wife and daughter, under the circumstances disclosed in his affidavit? (2) Was the substituted service upon Sandra and Margaret Wright through Jack Wright, attempted by the Marshal, effective to vest this Court with jurisdiction over them in light of the conceded fact that on the date of such attempted substituted service they did not reside at the place of abode of Jack Wright nor have their place of abode in New Jersey? (3) Was the service by registered mail of the alias summons upon Sandra and Margaret Wright, by virtue of F.R.Civ.P. 4(e) and N.J.R.R. 4:4–4(j), as amended, effective to extend this Court's jurisdiction to each of them?

The first question must be answered in the negative, and Jack Wright's motion is therefore dismissed.

With respect to the second question, the attempted substituted service upon Sandra and Margaret by leaving copies of the original summons with Jack Wright at his place of work in New Jersey, was ineffective to extend the Court's jurisdiction to either Sandra or Margaret. To be valid, such attempted substituted service would have had to comply with F.R.C.P. 4(d) (1) and (2). Such service intended for Margaret was not in conformity with Rule 4(d) (1) because the copy of the summons intended for her was not left at her then dwelling house or usual place of abode, nor with an agent authorized by appointment to receive such service. Sandra, at the time of the attempted substituted service was an infant 17 years old. Service upon her was required, by F.R.C.P. 4(d) (2), to be made "in the manner prescribed by

the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought" in the courts of New Jersey. N.J.R.R. 4:4–4(a) provides that service of summons upon an infant over fourteen years of age shall be made in the same manner as provided by F.R.C.P. 4(d) (1). Sandra did not reside nor have her usual place of abode at the place where the Marshal left the copy of the original summons with her father, intended for her; nor was her father her agent authorized to receive service of process. Consequently, the second question must also be answered in the negative.

■ Turning to the third question, we must look to the provisions of F.R.C.P. 4(e), as amended effective July 1, 1963, for the purpose of determining whether the attempted service of alias summons upon Sandra and Margaret by registered mail was effective to vest this Court with personal jurisdiction over each of them in this action. That subsection of the rule provides, in pertinent part, that "Whenever a * * * rule of court of the state in which the district court is held provides (1) for service of a summons * * * upon a party not an inhabitant of or found within the state, * * * service may * * * be made under the circumstances and in the manner prescribed in the * * * rule." N.J.R.R. 4:4–4(j) as recently amended, effective January 2, 1964, provides in pertinent part that "Whenever it shall appear by affidavit of the attorney for the plaintiff or of any person having knowledge of the facts, that, after diligent inquiry and effort, an individual cannot be served in this State under any of the preceding paragraphs of this rule, then, consistent with due process of law, service may be made by mailing, registered mail, return receipt requested, a copy of the summons and complaint to the individual addressed to his dwelling house or usual place of abode. * * * *" The foregoing New Jersey Rule is therefore, by the provisions of F.R.C.P. 4(e), in effect a rule of this Court, and the service on Margaret and Sandra was valid if it was valid under the provisions of the New Jersey rule.

The conditions of N.J.R.R. 4:4–4(j) were strictly complied with in the present case: the appropriate affidavit was filed by an associate of the plaintiffs' attorney; the copies of the summons and complaint were mailed to Margaret and Sandra Wright by registered mail; and the receipts constitute evidence that the copies were actually received by both addressees. No judicial decision interpretive of the foregoing quoted portions of the amended New Jersey Rule has been disclosed either by counsel or the Court's own research. Finding that the manner of service required by the Rule was complied with in the present case, we must determine then only whether such service was in this case "consistent with due process of law" as required by the Rule.[1] The issue is whether, on the facts of the particular case, substituted service on a non-resident defendant is valid under due process of law, *not* whether the amended Rule itself or the method of service provided therein are consistent with due process.

■ The phrase "consistent with due process of law" in N.J.R.R. 4:4–4(j) was apparently intended to measure the extent to which, in each case, service can be made pursuant to that Rule. The purpose of the use of that phrase was to give the

---

1. No question has been raised by movants of the constitutionality of the amended New Jersey Rule, either as to (1) the validity of the particular method of service permitted by the Rule in giving adequate notice of the suit and opportunity to defend, or (2) whether such service can validly be employed, on the facts of this case, to bring the non-resident defendants within the jurisdiction of this Court.

Movants have attacked the service by registered mail solely for the reason that it did not "come within" nor "comply with" the Rules of this Court; of course, the application of the language of the amended New Jersey Rule does, in effect, require a determination of question (2), i. e. whether service under the Rule can validly be employed in this case.

New Jersey courts (and, by F.R.C.P. 4(e), the Federal courts sitting in this District) the power to " * * * claim every variety of *in personam* authority over non-resident individuals which the United States Supreme Court will not reject as an excess of constitutional due process," Schnitzer and Wildstein, New Jersey Rules Service, Special Release No. 4–1963, p. 19.[2]

The amended Rule must be read, then, as if its language had specifically provided for service by mail in the particular factual situation of each case to which the Rule is applied. Thus, in this case, the Rule must be read as if it had said that the prescribed method of substituted service could vest the court with personal jurisdiction over a non-resident person who, while a resident of New Jersey, committed a tortious act by means of a boat which he was operating on the waters of a lake in New Jersey. If the language of the Rule had read this way and if such a Rule were valid under the Due Process clause of the Fourteenth Amendment, then service under that Rule would give the court personal jurisdiction of such a non-resident individual.

Although the personal jurisdiction of a court was traditionally limited to those persons who were actually present within the court's jurisdiction, Pennoyer v. Neff, 1877, 95 U.S. 714, 24 L.Ed. 565, the Supreme Court has held that, with respect to a foreign corporation, " * * * due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington etc., 1945, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95. And see McGee v. International Life Insurance Co., 1957, 355 U.S. 220, 78 S.Ct.

199, 2 L.Ed.2d 223; Hanson v. Denckla, 1958, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283. With the exception of statutes giving a state personal jurisdiction over non-resident motorists for causes of action arising out of their operation of motor vehicles within the state, the Supreme Court has not decided the validity, under the due process clause, of a court's assertion of personal jurisdiction over an individual, who was not present in the court's jurisdiction, solely on the basis of his commission of a tortious act within that jurisdiction where he resided at the time of the act. See Annotation, "State's power to subject nonresident individual, other than a motorist, to jurisdiction of its courts in action for tort committed within state," 78 A.L.R.2d 397 (1961).

Several decisions of State and lower Federal courts have, however, upheld the validity, as due process, of the assertion of such jurisdiction. In Bluff Creek Oil Co. v. Green, 5 Cir. 1958, 257 F.2d 83, the court upheld the validity, under the due process clause, of an Illinois statute which provided that any person, whether or not a resident, submitted to the jurisdiction of the courts of Illinois by, *inter alia*, committing a tortious act within that state. Pursuant to that statute, substituted service on a foreign corporation, whose agent had allegedly made misrepresentations to the plaintiff in contract negotiations which had taken place in Illinois, was upheld. Similarly, in Nelson v. Miller, 1957, 11 Ill.2d 378, 143 N.E.2d 673, the same provision of the Illinois statute was held valid in giving the Illinois courts personal jurisdiction over a nonresident individual for an allegedly negligent act which occurred within the state; and in Frase v. Columbia Transportation Co., D.C.Ill.1957, 158 F.Supp. 858, an Illinois statute, making the use and operation by any person of a motorcraft in the waters of that state a basis

---

2. The Rule was amended as a result of a suggestion that it be so changed in order " * * * to protect New Jersey residents for a cause of action arising out of acts done here when the defendant has left the State by having process served outside the State either personally or by registered mail." Report of the New Jersey Supreme Court's Committee on Rules, April 4, 1963, p. 5.

for substituted service, was upheld under the due process clause.

Owens v. Superior Court of Los Angeles County, 1959, 52 Cal.2d 822, 345 P.2d 921, 78 A.L.R.2d 388, is very close to the present case. There the California statute, as construed by the California Supreme Court, provided that the state's courts have personal jurisdiction over non-resident individuals to the extent constitutionally permissible, so long as, *inter alia*, the individuals were residents of the state when the cause of action arose. The defendant in Owens had been a resident of California when his dog had injured the plaintiff there, and the California Supreme Court held that, on those facts, the exercise of personal jurisdiction over the defendant, then a resident of Arizona, was valid under the due process clause.

In the present case, the claim is based on the allegedly tortious act committed by Sandra and imputable to Margaret Wright. The act consisted of the allegedly negligent use and operation of a motor boat by Sandra on the waters of a lake in the State of New Jersey, which negligence caused plaintiffs to suffer personal injuries and other damages. The motor boat in question was owned by Margaret and Jack Wright, operated and kept by them on the same lake, and was allegedly operated in this instance by Sandra, with their permission. From May of 1961, two months before the alleged tortious act, through the end of July of 1963 (several days after the complaint was filed), Sandra and Margaret were bona fide residents of New Jersey, living in the household of the co-defendant Jack Wright.

In light of the Bluff Creek Oil, Nelson, Frase and Owens decisions, supra, the foregoing facts demonstrate that Sandra and Margaret had sufficient contacts with New Jersey so that the assertion of personal jurisdiction over them by substituted service, even though they are now non-residents, does not deny them due process. Having enjoyed the benefits of residence here, including the use of this State's recreational facilities, it is fair and just to make them subject to the jurisdiction of this state's courts in connection with any claim which arose out of their enjoyment of those benefits. Their long residence in this State, terminated only by the fortuitous event of the separation (shortly after the complaint was filed), makes it less inconvenient for them to respond here, to claims arising out of their action here, than for the plaintiffs, residents of New York City, to bring their action in Pennsylvania, having in mind that the co-defendants Sarlitt in this case are residents of New Jersey. The contacts of Sandra and Margaret make it reasonable to require them to respond to any such claims in this State. Cf. International Shoe Co. v. Washington etc., supra, 326 U.S. p. 317, 66 S.Ct. 154, 90 L.Ed. 95.

Consequently, on the facts of this case, the assertion of personal jurisdiction by a New Jersey court over Sandra and Margaret, as a result of a boating accident allegedly caused by them while residents here, would be "consistent with due process of law" under the Fourteenth Amendment. They therefore could be brought within the jurisdiction of this court by service by registered mail by virtue of N.J.R.R. 4:4–4(j) which is made a rule of this court by F.R.C.P. 4(e). Thus, the service on them, by registered mail, of copies of the summons and complaint (which they concededly received) brought them personally within the jurisdiction of this Court. That service came within and complied with F.R.C.P. 4(e). The third question must be answered in the affirmative, and the motion of Sandra and Margaret Wright to quash service on them must be denied.

Having found personal jurisdiction over the defendants Sandra and Margaret Wright, they will be accorded thirty days from the date of service upon them, by registered mail, of a true copy of the order to be entered upon this opinion, within which to file answer or otherwise move with respect to the complaint herein.

An appropriate order may be submitted.