J. W. SPARKS & CO., A LIMITED PARTNERSHIP OF NEW YORK, PLAINTIFF-APPELLANT, v. JOHN H. GALLOS, DEFENDANT-RESPONDENT.

Argued April 25, 1966—Decided June 6, 1966.

*Mr. William A. Dreier* argued the cause for appellant (*Messrs. Mackenzie, Welt & Dreier,* attorneys; *Messrs. Cotton, Brenner & Wrigley,* by *Roy F. Wrigley,* a member of the New York Bar, of counsel).

*Mr. Irving F. Sturm* argued the cause for respondent.

The opinion of the court was delivered by

JACOBS, J. The plaintiff, a limited partnership of the State of New York, is a stock brokerage firm having its principal offices in the City of New York and a branch office in Morristown, New Jersey. As a result of a telephone call from the Morristown office, the defendant, a resident of Roselle, Union County, New Jersey, ordered 1,000 shares of Econo-Car International stock on the New York over-the-counter market. Pursuant to this direction, the plaintiff made over-the-counter purchases in New York aggregating 1,000 shares on the defendant's account and sent confirmation slips directly from its New York offices to the defendant at his Roselle address. A dispute arose as to the purchase price and the defendant refused to pay for the shares. After giving notice, the plaintiff sold the shares on the New York over-the-counter market with a resulting net loss of $840.64.

In due course, the plaintiff brought an action against the defendant in the New York City Civil Court seeking recovery of the $840.64. Service of the summons and complaint was made personally on the defendant at his residence in Roselle by the Union County Sheriff's office. This was done pursuant to section 404 of the New York City Civil Court Act which provides that the court may exercise personal jurisdiction over a nonresident as to a cause of action arising from any of the acts enumerated in the section, where the nonresident, in person or through an agent, "transacts any business within the city of New York." Apart from its territorial restrictions, section 404 is identical with New York State's "long arm" statute (CPLR § 302). See *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N. Y. 2d 443, 261 N. Y. S. 2d 8, 209 N. E. 2d 68 (1965), *certiorari* denied *Estwing Mfg. Co. v. Singer,* 382 U. S. 905, 86 S. Ct. 241, 15 L. Ed. 2d 158.

The defendant failed to answer the New York action and judgment by default was entered against him in the New York City Civil Court. Thereafter the plaintiff brought a New Jersey action in the Union County District Court founded on the New York judgment. The defendant's answer

denied the jurisdiction of the New York court over him and cross motions for summary judgment were then made by the parties. The District Court denied the plaintiff's motion, granted the defendant's motion, and entered judgment in the defendant's favor. The plaintiff filed its notice of appeal to the Appellate Division and the parties entered into an agreed statement in lieu of record under *R. R.* 1:6–2. We certified before argument was heard in the Appellate Division. *R. R.* 1:10–1(a).

In granting summary judgment, the District Court took the position that under *Pennoyer v. Neff*, 95 *U. S.* 714, 24 *L. Ed.* 565 (1878), New York could not constitutionally exercise jurisdiction over the defendant without serving him with process within its territorial limits. It expressed awareness of the holdings in cases such as *International Shoe Co. v. State of Washington,* 326 *U. S.* 310, 66 *S. Ct.* 154, 90 *L. Ed.* 95 (1945), and *McGee v. International Life Ins. Co.,* 355 *U. S.* 220, 78 *S. Ct.* 199, 2 *L. Ed. 2d* 223 (1957), which displaced the rigid requirements of *Pennoyer* with a more flexible standard resting largely on minimal contacts and notions of fair play and substantial justice. But it concluded that those holdings apply only to nonresident corporations and are "inapplicable to individuals, per se, where personal liability is sought." *Compare* Gibson and Freeman, "Business Associations," 50 *Va. L. Rev.* 1265, 1271–1276 (1964), *with* Smithers, "Virginia's 'Long Arm' Statute: An Argument for Constitutionality of Jurisdiction Over Nonresident Individuals," 51 *Va. L. Rev.* 712 (1965). In meeting the ground advanced for the decision below, the plaintiff urges that the District Court was mistaken in determining "that different constitutional rules apply to a State's power to have process served upon out-of-state corporations and upon out-of-state individuals." See *Owens v. Superior Court of Los Angeles County,* 52 *Cal. 2d* 822, 831, 345 *P. 2d* 921, 924–925 (1959); Kurland, "The Supreme Court, The Due Process Clause and The In Personam Jurisdiction of State Courts—From *Pennoyer* to *Denckla:* A Review," 25 *U. Chi. L. Rev.* 569, 609

(1958); Currie, "The Growth of the 'Long Arm'," 1963 *U. Ill. L. F.* 533, 560–561; Note, "The Virginia "Long Arm' Statute," 51 *Va. L. Rev.* 719, 729 (1965).

In *Pennoyer* the court held that a state's power to render a personal judgment against a nonresident defendant must be rested on his presence within the state when served or upon his consent to the exercise of its jurisdiction. In later years fictive terminology such as constructive presence and implied consent was invoked in aid of the state's power; thus foreign corporations which did business within the state were said to be constructively present or to have impliedly consented (*cf.* Kurland, *supra,* at *pp.* 577–586); and individuals who used the state's highways or engaged in certain business therein were said to have subjected themselves in similar manner to the state's jurisdiction. See *Hess v. Pawloski,* 274 *U. S.* 352, 47 *S. Ct.* 632, 71 *L. Ed.* 1091 (1927); *Henry L. Doherty & Co. v. Goodman,* 294 *U. S.* 623, 55 *S. Ct.* 553, 79 *L. Ed.* 1097 (1935). In *International Shoe Co. v. State of Washington, supra,* the Supreme Court discarded all of the earlier talk of constructive presence and implied consent and expressed the modern test of jurisdiction which openly rests on considerations of fairness and reasonableness in the light of the defendant's contacts with the forum state. 326 *U. S.,* at *p.* 316, 66 *S. Ct.,* at *p.* 154, 90 *L. Ed.,* at *p.* 102.

In *International Shoe* the defendant was a Delaware corporation which had no office or property in the State of Washington but did employ salesmen to solicit orders there. The State of Washington sought unemployment insurance contributions from the defendant which unsuccessfully contended that it was not amenable to its jurisdiction. Although Chief Justice Stone's opinion dealt specifically with a defendant corporation, it left no reason to doubt that the constitutional test being expounded was applicable to nonresident individuals as well as to foreign corporations:

"Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was

prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U. S. 714, 733, 24 L. Ed. 565, 572. But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' Milliken v. Meyer, 311 U. S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278, 283, 132 A. L. R. 1357. See Holmes, J., in McDonald v. Mabee, 243 U. S. 90, 91, 37 S. Ct. 343, 61 L. Ed. 608, 609, L. R. A. 1917F, 458. Compare Hoopeston Canning Co. v. Cullen, 318 U. S. 313, 316, 319, 63 S. Ct. 602, 87 L. Ed. 777, 781, 783, 145 A. L. R. 1113. See Blackmer v. United States, 284 U. S. 421, 52 S. Ct. 252, 76 L. Ed. 375; Hess v. Pawloski, 274 U. S. 352, 47 S. Ct. 632, 641, 71 L. Ed. 1091; Young v. Masci, 289 U. S. 253, 53 S. Ct. 599, 77 L. Ed. 1158, 88 A. L. R. 170." 326 *U. S.*, at *p.* 316, 66 *S. Ct.*, at *p.* 158, 90 *L. Ed.*, at *pp.* 101–102.

In *McGee v. International Life Ins. Co., supra,* a resident of California purchased an insurance policy from an Arizona company. The Arizona company was later taken over by the defendant, a Texas company, which mailed a reinsurance certificate to the assured who in turn mailed his premiums to the defendant's Texas office. After the assured died, the beneficiary sued the defendant in California, serving it by mail, and obtained a California judgment which the Texas courts later refused to enforce. In holding that the California court had jurisdiction to act and that its judgment was entitled to full faith and credit in the Texas courts, the Supreme Court applied *International Shoe,* noting particularly the California contacts including the delivery of the contract there, the mailing of the premiums from there, and the residency there of the assured when he died. In his opinion, Justice Black referred to the expanding permissible scope of state jurisdiction over "foreign corporations and other nonresidents" and, citing cases which involved nonresident individuals as defendants, he expressed the view that it was sufficient for purposes of due process that the suit was based on a contract which had "substantial connection" with California. 355 *U. S.,* at *pp.* 222–223, 78 *S. Ct.,* at *p.* 199, 2 *L. Ed. 2d,* at *p.* 226.

It is true that in *Hanson v. Denckla*, 357 *U. S.* 235, 78 *S. Ct.* 1228, 2 *L. Ed.* 2d 1283 (1958), there was a rejection of a state's claim of jurisdiction over nonresident individuals but not on any distinction between individuals and corporations; the Court's holding was that there were not sufficient contacts with the forum state to satisfy the requirements of *International Shoe*. Chief Justice Warren cited, as did *McGee,* the trend of expanding personal jurisdiction over "nonresidents" but said it would be a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. He referred to the territorial limitations on the power of the respective states, to the fact that a nonresident may not be called to defend in the forum state when he has not had minimal contacts with that state, and to the need "that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 *U. S.,* at *p.* 253, 78 *S. Ct.,* at *p.* 1240, 2 *L. Ed.* 2d, at *p.* 1298.

Nothing in *Hanson, McGee* or *International Shoe* furnishes support for the District Court's flat differentiation of nonresident individuals from foreign corporations. Nor are we persuaded that there should be such differentiation. As Professor David Currie has pointed out, *International Shoe* made it clear that the test is "fundamental fairness" to the defendant in the light of his contacts with the forum state, its legitimate interests, and the interests of trial convenience, and that there is no justification for limiting the test to corporations for if it is fair to subject corporations with business contacts in a state to legal action there, it is also fair to do the same with respect to individuals "similarly situated." 1963 *U. Ill. L. F.,* at *p.* 561. Other secondary authorities as well as judges have taken a like approach; appropriate reference to them may be found in 51 *Va. L. Rev., supra,* at *pp.* 728–729 where the author wound up his discussion of the historic development of personal jurisdiction over nonresidents with the following paragraph:

"In conclusion, although some writers have made the attempt, it is not possible to be precise in defining the 'minimum contacts' which will sustain jurisdiction over due process objections. The reason for the difficulty is an obvious one—that due process, or its equivalent expressed in terms of 'minimum contacts,' is simply a test of fundamental fairness; and without a specific factual context it is impossible to say with certainty what fairness is. In fact, the 'minimum contacts' test is an attempt by the Supreme Court to describe, with as much particularity as it could, a standard by which fairness can be measured. Furthermore, it is quite probable that due process may require less contact to sustain jurisdiction in a personal injury case than in a purely commercial suit, so that a more specific definition could not accommodate both. Thus, although a small amount of activity, even a single act, may be a sufficient basis for personal jurisdiction over a nonresident in a suit related to that act, the courts must return to the holdings and language of *International Shoe*, *McGee*, and *Hanson* for guidance as to the specific requirements of due process in each particular case. Finally, it must be noted that although *International Shoe*, *McGee*, and *Hanson* dealt with corporate defendants, language in *International Shoe* seems to equate nonresident individuals with foreign corporations as to matters of service. The courts and commentators, including the American Law Institute and the Commissioners on Uniform Laws, are in substantial accord with Justice Traynor's statement on this question: 'The rationale of the International Shoe case is not limited to foreign corporations, and both its language and the cases sustaining jurisdiction over nonresident motorists make clear that the minimum contacts test for jurisdiction applies to individuals as well as foreign corporations.' " 51 *Va. L. Rev.*, at *pp.* 728–29.

See *Rosenblatt v. American Cyanamid Company*, 86 *S. Ct.* 1, 15 *L. Ed. 2d* 39; 382 *U. S.* 110, 86 *S. Ct.* 256, 15 *L. Ed. 2d* 192 (1965); see also *R. R.* 4:4–4(j); *Carlin v. Schuler*, 89 *N. J. Super.* 366, 369 (*Law Div.* 1965); *DeFazio v. Wright*, 229 *F. Supp.* 111, 115–116 (*D. N. J.* 1964); Annot., 78 *A. L. R. 2d* 397, 400 (1961).

We come now to the remaining questions in the case: (1) were the defendant's acts here sufficient to meet the constitutional test of due process as applied in *International Shoe, McGee* and *Hanson,* and (2) if they were, did they constitute the transaction of business within the City of New York within the meaning of New York's legislation. It is not disputed that while New York may legislate to the outer constitutional limits it may stop at a point short thereof. See

*Perkins v. Benguet Consolidated Mining Co.*, 342 *U. S.* 437, 446, 72 *S. Ct.* 413, 96 *L. Ed.* 485, 493 (1952). As we view the situation on the basis of the facts stipulated by the parties and the natural inferences to be drawn therefrom, the defendant's acts were sufficient to meet the constitutional test of the Supreme Court cases.

It must be borne in mind that the transaction here involved the purchase and sale of stock on a New York exchange or market, a type of transaction in which New York may properly assert a special interest. *Cf. Restatement (Second), Conflict of Laws* § 346 m (*Tent. Draft No.* 6, 1960). The defendant's account was with a New York brokerage firm and, although he placed his purchase order with the firm's Morristown branch office, his order was to make the purchase on the New York over-the-counter market. He was aware that the plaintiff, acting as his agent, would engage in a transaction of purchase and sale in New York, and within the language of *Hanson* he purposefully availed himself of the privilege of conducting activities, through his agent, within that state. 357 *U. S.*, at *p.* 253, 78 *S. Ct.*, at *p.* 1228, 2 *L. Ed. 2d*, at *p.* 1298. If, because of the defendant's failure to pay the purchase price, the seller had been called upon to sue him, there would have been justification for the seller to have brought action in New York with service on the defendant in New Jersey. Clearly, such action would not have involved fundamental unfairness to the nearby New Jersey defendant who, through his agent, had entered New York for the distinctly commercial or business transaction; and as *McGee* indicated, it would be sufficient for constitutional purposes to rest on the fact that the action was based on a contract which had substantial connection with New York. 355 *U. S.*, at *p.* 223, 78 *S. Ct.*, at *p.* 199, 2 *L. Ed. 2d*, at *p.* 226.

█ The plaintiff brokerage firm is not the seller but is the buyer's agent who, in effect, paid the purchase price to the seller and seeks indemnification from the principal. It appears to us that the distinction is not significant here and that the plaintiff could, so far as outer constitutional limits are

concerned, properly be permitted to maintain action in New York as the seller could. *Cf.* Currie, *supra,* 1963 *U. Ill. L. F.,* at *p.* 572. The purchase order went to the plaintiff at New York, the confirmations were sent by the plaintiff from New York, and the original purchases, along with the later liquidation sale, were actually made by the plaintiff on the defendant's account on the over-the-counter market at New York. These steps were clearly within the contemplation of the defendant's business relations with the plaintiff and they furnished the required minimal contacts with New York. Though the plaintiff might well have selected New Jersey as the forum for determination of its dispute with the defendant, we do not consider that there was fundamental unfairness in its choice of New York. In reaching this conclusion we have given weight to all of the pertinent factors and particularly to the special type of transaction involved and the close proximity of the respective forums. See Currie, *supra,* 1963 *U. Ill. L. F.,* at *p.* 577; *cf. International Shoe Co. v. State of Washington, supra,* 326 *U. S.,* at *p.* 317, 66 *S. Ct.,* at *p.* 154, 90 *L. Ed.,* at *p.* 102; *Travelers Health Ass'n v. Com. of Virginia,* 339 *U. S.* 643, 648–649, 70 *S. Ct.* 927, 94 *L. Ed.* 1154, 1161–1162 (1950); *McGee v. International Life Ins. Co., supra,* 355 *U. S.,* at *pp.* 223–224, 78 *S. Ct.,* at *p.* 199, 2 *L. Ed. 2d,* at *p.* 226.

The New York courts have held that by enacting its long arm statute "the Legislature has not extended New York's jurisdiction to the utmost constitutional limit." *A. Millner Co. v. Noudar, LDA,* 24 *A. D.* 2d 326, 266 *N. Y. S.* 2d 289, 293 (1966). See *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra,* 261 *N. Y. S.* 2d, at *pp.* 20–21, 209 *N. E.* 2d, at *p.* 77; *Platt Corp. v. Platt,* 17 *N. Y.* 2d 234, 270 *N. Y. S.* 2d 408, 217 *N. E.* 2d 134 (1966). In *Platt* an action was instituted in New York against a defendant who resided in Florida and was served there. The complaint alleged that the defendant was a director of the plaintiff corporation, failed to attend directors' meetings in New York, and failed to perform his duties as director in New York with resulting

loss to the corporation. In holding that there was a lack of jurisdiction, the court, noting that New York had not assumed all of the constitutionally permissible jurisdiction, determined that the defendant had not committed "a tortious act within the state" (CPLR § 302(a)(2)) and had not engaged in the transaction of "any business within the state" (CPLR § 302(a)(1)) within the meaning of New York's statute. In the latter connection, stress was laid on the fact that the defendant was never within New York but had accepted his directorship by letter and a telegram from Florida and had executed the various corporate instruments in Florida. *Cf. J. K. Rosenberg, Inc. v. Greenfield,* 44 *Misc. 2d* 600, 254 *N. Y. S. 2d* 357 (*App. T.* 1964); *A. Millner Co. v. Noudar, LDA, supra,* 266 *N. Y. S. 2d,* at *pp.* 292–295.

In *Millner* the defendant in Portugal wrote to the plaintiff in New York offering to make the plaintiff its sole representative for the sale of its food products in the United States. The offer was accepted by a letter sent by the plaintiff from New York to the defendant in Portugal. Thereafter the plaintiff sold the defendant's products in the United States and the defendant came to New York in connection with the business relationship. The plaintiff sued the defendant in New York, serving it under the long arm statute. A motion to dismiss was denied by the trial court and this was affirmed by the Appellate Division in an opinion which held (1) that the mailing of the contract offer by the defendant to the plaintiff in New York did not constitute the transaction of business within the meaning of the statute but (2) that the additional acts by the defendant in New York pursuant to the contract were sufficient to subject it to New York's jurisdiction. In the course of his opinion, Justice Witmer noted that while under *McGee, supra,* 355 *U. S.* 220, 78 *S. Ct.* 199, 2 *L. Ed. 2d* 223, the mailing of a contract into a state may be a sufficient basis of jurisdiction, New York's Legislature had not gone that far, and he cautioned that "enthusiasm for extending jurisdiction over foreign persons in foreign lands in limited

contact cases, however, may well be tempered by the expectation that the same rule will be reciprocally applied in remote countries against our citizens here." 266 *N. Y. S. 2d,* at *p.* 294.

Many other New York decisions bearing on the construction of its long arm statute may be found in *McKinney's Consolidated Laws of New York Annotated* CPLR § 302, and 1 *Weinstein, Korn & Miller, New York Civil Practice, par.* 302.01 *et seq.* (1965). See also Note, "Jurisdiction Over Nondomiciliaries," 51 *Cornell L. Q.* 377 (1966). Whether the statute was intended by the New York Legislature to extend to a case such as the one now before us should, of course, be determined by the New York courts rather than by us. *Cf.* Note, "Abstention — Election of Forum and Intersovereign Certification," 18 *Rutgers L. Rev.* 895 (1964). There is no controlling judicial opinion, and unfortunately New York's judgment here was a default one which may hardly be viewed as constituting a deliberative judicial interpretation of its statute. At oral argument the plaintiff indicated that its main concern was in obtaining a dispositive legal determination with precedential value and the defendant indicated that his default had resulted from the belief, which we have found to be a mistaken one, that New York's long arm jurisdiction could not extend to nonresident individuals. Under the circumstances, it appears to us that the just course now would be to permit the defendant to seek, with the plaintiff's cooperation, the reopening of the judgment in New York to the end that he may there obtain an interpretative determination as to the applicability of New York's long arm statute to his transaction, and to obtain a determination on the merits of the dispute between the parties, if the statute is deemed applicable. Should reopening be denied, enforcement of the judgment may be had by the plaintiff as sought by its complaint in the District Court.

Reversed and remanded for further proceedings in conformity with this opinion.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.