**RADIATION TECHNOLOGY, INC.**

**v.**

**SOUTHERN RAD, INC., et al.**

**No. C75–213A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 5, 1975.

---

Bryan Cavan, Moulton, Carriere, Cavan & Maloof, Decatur, Ga., for plaintiff.

William Lewis Spearman, Atlanta, Ga., for defendants.

## ORDER

MOYE, District Judge.

This case presents a collateral jurisdictional attack by defendants William and Rodney Price and W. Lewis Spearman on a default judgment entered against them by the United States District Court for the District of New Jersey and subsequently registered in this Court by plaintiff under 28 U.S.C. § 1963.

The facts are as follows:

On August 3, 1975, after a course of dealing, defendant Southern Rad, Inc., a Georgia corporation, signed an exclusive distributorship contract with plaintiff Radiation Technology, Inc. [RTI], a New Jersey Corporation. Under the contract, Southern Rad obtained the exclusive right to distribute RTI's polymer chemical products in the Southeastern United States. The contract provided in paragraph 11 for a minimum purchase by Southern Rad of products worth $100,000 during the first year. The contract contained the following notice, choice-of-law and jurisdiction provisions:

"(18)(b) Any notice required to be given by either party to the other under or in connection with this Agreement shall be in writing and delivered personally or by mail. Notices to Distributor [Southern Rad] shall be directed to Distributor or its representative at Distributor's place of business; notices to RTI shall be directed to its representatives at RTI's place of business.

"(c) This Agreement is to be governed by and construed according to the laws of the State of New Jersey. The parties hereto expressly consent to and confer jurisdiction on the Courts of the State of New Jersey should any dispute arise pursuant to this Agreement."

In connection with the contract, the six named individual defendants executed the following guarantee:

"The undersigned personally and in their individual capacities hereby guarantee the foregoing obligations of Southern Rad, Inc., to Radiation Technology, Inc., to purchase Products of Radiation Technology, Inc., in the sum of $100,000.00 invoice price within twelve (12) months from the date hereof.

"This 3d day of August, 1973.

 [signed] W. L. Spearman
 Rodney B. Price
 William R. Price
 Max K. Berry
 George McIngvale
 Don DeLoach"

RTI sued Southern Rad and the six guarantors, *supra,* of the distributorship agreement in the United States District Court for the District of New Jersey on October 18, 1973. The complaint recited four causes of action: (1)–(3) breach

of contract and book accounts, and (4) dishonored checks (due to insufficient funds) in the amount of $36,000 given in payment to RTI by Southern Rad. The complaint sought damages totaling $300,000.

Service was purportedly effected on Southern Rad, W. L. Spearman, Rodney Price and William Price, nonresident defendants, in Georgia, by registered or certified mail pursuant to N.J.R.R. 4:4–4(e) (New Jersey Rules of Court), effective in the United States District Court by Fed.R.Civ.P. 4(d), (e) and (f). The Marshal's Return of Service shows that movant defendants R. Price, W. Price and W. L. Spearman were served on October 25, 1973, as evidenced by Certified Mail Numbers 383660, 383658 and 383661, respectively.

The defendants, through Mr. Spearman, attempted to file a motion to dismiss in the New Jersey court on November 30, 1973, alleging lack of jurisdiction, insufficiency of service of process, improper venue and failure to state a claim. However, the motion was never filed due to the failure of the corporate and individual defendants to proceed through New Jersey counsel.

RTI's counsel in New Jersey, Mr. Stephen B. Judlowe, informed the defendants by letter dated December 14, 1973, that the Clerk of Court had informed him that, absent New Jersey counsel, the motion would not be filed. Mr. Judlowe continued:

"Please be advised that unless an Answer is received and filed within ten days from the date of this letter, or a proper Rule 12 motion made, plaintiff will move for a default judgment against all defendants."

The New Jersey District Court subsequently entered a default judgment against the defendants on January 29, 1974. The default judgment recited the following:

"The summons and complaint in the above-entitled action having been duly served on the defendants Southern Rad, Inc., Max K. Berry, George McIngvale, William Price, Rodney Price and W. Lewis Spearman and the defendants having been defaulted for failure to appear in the action, and the plaintiff having filed an affidavit of the amount due,

"It is, on this 29th day of January, 1974,

"ORDERED that judgment be entered in favor of the plaintiff Radiation Technology, Inc., and against the defendants Southern Rad, Inc., Max K. Berry, George McIngvale, William Price, Rodney Price and W. Lewis Spearman for $150,744.25."

On February 5, 1975, pursuant to 28 U.S.C. § 1963, the plaintiff RTI registered the New Jersey judgment with the Clerk of this Court.

On May 19, 1975, three defendants in the New Jersey case, William Price, Rodney Price and W. Lewis Spearman filed the instant motion in this Court seeking (a) a declaratory judgment declaring that the default judgment registered in this Court from the New Jersey court is void as to these three defendants for lack of in personam jurisdiction within the State of New Jersey, and (b) a temporary and permanent injunction against the plaintiff's enforcement of the judgment.

The motion, supported by affidavits from the three movants, recites the following:

"Movants do not reside and have not resided at any time material hereto within the State of New Jersey; have not entered into or been in the State of New Jersey; have not accepted service of process within the State of New Jersey; have not agreed to jurisdiction of the courts in New Jersey over their person; have not appeared in the case in which judgment therein was sought. Additionally, movants have not been served in any lawful manner to subject them to the

jurisdiction of the courts within the District of New Jersey, and the jurisdiction of such courts over the person of the movants in connection with such case has not been adjudicated."

The plaintiff counters, stating that the New Jersey court had jurisdiction over these defendants under its long-arm jurisdiction and that proper and legal service was effected by mail under New Jersey law.

Neither side has briefed the question of the scope of this Court's jurisdiction to challenge a "foreign" federal court default judgment registered in this Court pursuant to 28 U.S.C. § 1963. The Court first addresses itself to that issue.

Title 28 U.S.C. § 1963 provides as follows:

"§ 1963. Registration in other districts

"A judgment in an action for the recovery of money or property now or hereafter entered in any district court which has become final by appeal or expiration of time for appeal may be registered in any other district by filing therein a certified copy of such judgment. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

"A certified copy of the satisfaction of any judgment in whole or in part may be registered in like manner in any district in which the judgment is a lien."

 That a federal court where a default judgment is registered has the power to inquire into the truth of jurisdictional allegations not adjudicated by the court where judgment was originally entered is settled by *Hanes Supply Co. v. Valley Evaporating Company*, 261 F.2d 29 (5 Cir. 1958).

In the *Hanes* case, the plaintiff, Valley Evaporating Company, obtained a default "foreign" judgment against a nonresident Georgia defendant in the United States District Court for the District of Oregon. The plaintiff registered the judgment in the Northern District of Georgia pursuant to the federal judgment registration statute, 28 U.S.C. § 1963.

The defendant, Hanes, filed a motion to dismiss in the Georgia District Court stating that the alleged arbitration agreement under which the Oregon court purported to claim jurisdiction pursuant to 9 U.S.C. §§ 2, 9, was invalid and that, even if valid, it required arbitration in Cincinnati, Ohio, not Portland, Oregon. The issue had never been litigated in the Oregon court, Hanes having denied jurisdiction and having never appeared to defend itself.

The Georgia District Court overruled Hanes' motion to dismiss, upholding the service by mail on a nonresident pursuant to the federal arbitration statute, 9 U.S.C. §§ 2, 9. However, the Georgia District Court refused to look beyond the judgment to Hanes's claim that § 9 of 9 U.S.C. never came into play in the first place because Hanes denied the existence of the arbitration contract, denied that Portland was specified as the place for arbitration, and that therefore the Oregon court never obtained jurisdiction over Hanes under 9 U.S.C. § 9, and that service of process and venue under the statute were invalid.

Since the Oregon court determined solely from the face of the original complaint that the allegations of fact were true and that they supported attempted service on nonresident Hanes by mail, the Fifth Circuit ruled that the Georgia District Court erred in foreclosing to itself the opportunity to contest the unlitigated jurisdictional facts of a foreign default judgment "registered" in the Court under 28 U.S.C. § 1963. The Court of Appeals reversed the district court and remanded the case for further fact finding. See also *Bass v. Hoagland*,

172 F.2d 205 (5 Cir. 1949); *Hadden v. Rumsey Products,* 196 F.2d 92 (2d Cir. 1952) ("Registration" Court must take proof on question of whether judgment entered in trial court was obtained by fraud, duress or fraudulent misrepresentation and concealment); *United States v. Fluor Corporation,* 436 F.2d 383 (2d Cir. 1970) (court of registration, in the exercise of discretion and in the interest of comity and efficient judicial administration should decline to hear collateral attack on judgment where virtually the same issues had been already considered, in a post-judgment motion, by the district court where the judgment had been rendered; court should refer issues back to the court of rendition); *Coleman v. Patterson,* 57 F.R.D. 146 (S.D.N.Y.1972) (Court, in exercise of its discretion, should decline to hear collateral attack on default judgment entered in rendition court, and registered pursuant to § 1963, where rendition court had carefully considered questions of service and jurisdiction, and transaction occurred outside New York and witnesses were located in Texas).

The posture of the instant case is similar to that of the *Hanes* case. The movant-defendants never litigated the issues of in personam jurisdiction, service of process and venue in the New Jersey District Court although they attempted to file there a motion to dismiss. Although this Court could decline to exercise its jurisdiction under the *Coleman* and *Fluor* cases, *supra,* this would be inappropriate since those cases turn on the issue of a prior litigation of jurisdictional issues in the rendition Court. There was no such prior determination in the instant case. Therefore, under *Hanes, supra,* and *Bass v. Hoagland, supra,* the Court holds that it has jurisdiction to hear a collateral attack on the New Jersey judgment based on lack of personal jurisdiction and insufficiency of service of process.

The plaintiff, Radiation Technology, Incorporated, submits the following facts in support of its position that in personam jurisdiction and service of process was proper in the New Jersey court:

Defendants, Rodney Price and William Price (nephew and uncle) are residents of Georgia and Florida, respectively, and W. L. Spearman is a resident of Georgia —and attorney for defendants in this action (Welt June Aff., par. 3).

Southern Rad, Inc., is a Georgia corporation incorporated by Mr. Spearman's firm in 1973 (an associate of the firm has been its registered agent). Defendants constitute its three directors as set forth in the Southern Rad Articles of Incorporation (Annexed to Welt Aff. as Exhibit B), and are principals among the Southern Rad's shareholders (Welt June Aff., par. 4).

Plaintiff, Radiation Technology, Inc., is a publicly held corporation having its sole plant and facilities in Rockaway, New Jersey. Relevant for purposes here, its lines of business included the manufacture and sale of a line of related polymer chemical products.

Martin A. Welt is and has been the president of RTI during all periods at issue herein. (Welt June Aff., par. 1).

During the Spring of 1973, defendant William Price was a shareholder of RTI, holding at least 5,000 shares of such corporation. As such Mr. William Price was familiar with RTI and its products. (Welt June Aff., par. 6). During the Spring of 1973, while he was a stockholder of RTI, William Price telephoned Martin Welt, president of RTI, at his office which is located at RTI's plant in New Jersey. During the ensuing conversation, William Price proposed an arrangement to Mr. Welt whereby he and his associates would sell and distribute certain of the products of RTI in the Southeastern United States. (Welt June Aff., par. 7). On March 20, 1973, pursuant to this contact Mr. William Price and Mr. Rodney Price visited Mr. Welt in New Jersey at the plant of RTI.

During this visit Mr. Welt discussed with William Price and Rodney Price their proposal to establish a distributorship for certain of RTI's products in the Southeastern United States and Mr. William and Mr. Rodney Price were given a tour of RTI's manufacturing facility. (Welt June Aff., par. 7). Mr. Welt's diary indicates that Mr. William Price together with Mr. Edward Mims, one of his associates in the proposed distributorship, made a further visit to RTI's plant in New Jersey on April 19, 1973, to discuss the mechanics of setting up the proposed distributorship. (Welt June Aff., par. 9). During this same period, Mr. Welt also met with Mr. William L. Spearman, the third of the defendants in Atlanta, Georgia. Mr. Spearman was associated with Mr. Rodney Price and Mr. William Price in the proposed distributorship. (Welt June Aff., par. 10).

Throughout the period of negotiation of the eventual distributorship agreement, Mr. Rodney Price, William Price and Mr. William L. Spearman were aware that the products which were to be supplied to them by RTI would be manufactured, packaged, shipped and invoiced from RTI's plant in New Jersey and that RTI was a New Jersey based corporation. Two of the defendants, Rodney Price and Mr. William Price, had personally inspected this plant. (Welt June Aff., par. 8 and 11). During this same period, Mr. Donald DeLoach, Mr. Michael Malone and Mr. Max Barry, representatives of the proposed distributorship, made several visits to RTI in New Jersey. (Welt June Aff., par. 12).

Beginning in or about May of 1973 Mr. Rodney Price, Mr. William Price, Mr. William L. Spearman and their associates were instrumental in the purchase of many thousands of dollars worth of RTI products on behalf of Southern Marking and later on behalf of Southern Rad. Both Southern Marking and Southern Rad were initiated by and

controlled by these defendants and through them defendants sought to market RTI's polymer products. Invoices reflecting these purchases are annexed to Welt Affidavit as Exhibit E. Several of the invoices refer specifically to "Rod Price" or "W. L. Spearman" (see Welt Affidavit as Exhibits E–1, E–2 and E–3). All of these invoices plainly indicated that products were to be shipped F. O.B. Rockaway, New Jersey, and set forth the address of RTI as Lake Denmark Road, Rockaway, New Jersey. (Welt June Aff., pars. 13 and 15). While operating as Southern Marking, the defendants did not timely pay for the goods shipped to them by RTI; and were dunned by Mr. Judlowe, RTI's counsel at Mr. Welt's direction (see Exhibit C annexed to Welt's Affidavit)— and Mr. Spearman's reply on behalf of defendants (see Exhibit C–1 and C–2 annexed to Welt's Affidavit) acknowledging the debt and pointing to internal misconceptions and lack of control as the reason for their failure to make timely payments. (Welt June Aff., par. 13).

On June 28, 1973, Rodney Price, William Price and William L. Spearman met with Roger Sonnemann (a director of RTI) and Mr. Welt at Mr. Sonnemann's office in New York City. During this meeting the outstanding problems between RTI and the defendant were discussed, and the defendants convinced Mr. Sonnemann and Mr. Welt that their corporation, which was then incorporated as Southern Rad, could and should be RTI's Southeastern distributor. In the course of this meeting Mr. William L. Spearman executed an order to RTI products on behalf of Southern Rad, which order is annexed to Welt Affidavit as Exhibit D. (Welt June Aff., par. 14).

The above-described negotiations culminated in an exclusive distributorship agreement between RTI and Southern Rad. (Annexed to Welt Affidavit as Exhibit F). This agreement was executed on or about August 3, 1973, at the

offices of Mr. Roger Sonnemann in New York City. Mr. W. L. Spearman attested to this agreement as the secretary of Southern Rad. (Welt June Aff., par. 16). At the time the distributorship agreement was executed, W. L. Spearman, Rodney Price and William Price and others executed a guarantee whereby they personally guaranteed the performance of Southern Rad under the distributorship agreement. This guarantee is annexed to the Welt Affidavit as Exhibit G and bears the signatures of Rodney Price, William Price and W. L. Spearman. In view of the past problems with Southern Marking and Southern Rad regarding payment for goods, RTI had demanded this guarantee as a precondition to entering into the distributorship agreement and considered it an essential part of that agreement. (Welt June Aff., par. 17).

The distributorship agreement sets forth RTI's principle offices as Rockaway, New Jersey, and further provides in paragraph 18(c) that the parties expressly consent to and confer jurisdiction on the courts of the State of New Jersey should any dispute arise pursuant to the agreement. (Welt June Aff., par. 18).

In response, the defendants filed the following factual allegations by affidavit of William L. Spearman:

"[Mr. Spearman] has never been within the geographical limits of the State of New Jersey.

"The guarantee dated August 3, 1973, on which the claims of the plaintiff against these defendants are based, was attached to the contract presented by the plaintiff to Southern Rad, Inc., at the beginning of negotiations between Southern Rad, Inc., and Radiation Technology, Inc. Such guarantee was stated by the plaintiff's president, Martin A. Welt, and the plaintiff's attorney Stephen B. Judlowe, to be a form required by them on all such agreements.

"The guarantee was intended by all parties throughout the negotiations between the plaintiff and the defendant Southern Rad, Inc., and these defendants to be solely for the purpose of creating a business flow in the first year under the agreement of $100,000, and no further or additional personal liability in regard to such flow of business was expected, discussed or anticipated.

"The purported guarantee was executed in Atlanta, Georgia, in August of 1973 for the sole purpose of inducing the plaintiff to ship goods to the defendant Southern Rad, Inc., on a credit basis.

"The order of June 21, 1973, on which the bulk of the plaintiff's claim is based was an order for goods which were never shipped to the defendant Southern Rad, Inc., or to these defendants, and that there has been no credit extended in regard to such order.

"The defendants never agreed in writing or otherwise to guarantee the performances of Southern Rad, Inc., under any agreement other than to guarantee the obligation of Southern Rad, Inc., to pay for $100,000 of products of the plaintiff. Contrary to the Affidavit of the plaintiff's president, Martin A. Welt, these defendants have never personally guaranteed any other item and never consented to or conferred jurisdiction on the courts within the State of New Jersey.

"The only party to the agreement other than the plaintiff was Southern Rad, Inc., on the face of such agreement, and these defendants were expressly not parties to such agreement, but executed a separate guarantee to cause the defendant Southern Rad, Inc., to purchase $100,000 of the plaintiff's products within 12 months.

"The claims of the plaintiff against these defendants are based on the guarantee agreement, and the guarantee agreement does not submit these defendants personally to the jurisdiction of the courts within the State of New Jersey."

The defendants argue that, whatever contacts William and Rodney Price and

W. Lewis Spearman had with plaintiff in New Jersey, these were not contacts pertinent to the transaction upon which plaintiff's claims are based.

Notwithstanding Mr. Spearman's affidavit, it is apparent that these defendants had more than the "minimum contacts" required for New Jersey to exercise its long-arm jurisdiction under New Jersey law and the United States Constitution. See generally N.J. R.R. 4:4–4 and cases cited thereunder. *Avdel Corporation v. Mercure,* 58 N.J. 264, 277 A.2d 207 (1971); *Resin Research Laboratories v. Gemini Roller Corporation,* 105 N.J.Super. 401, 252 A. 2d 415 (1969). The New Jersey courts have extended the state's long-arm jurisdiction to the "uttermost limits permitted by the United States Constitution." The *Avdel* case held there to be a sufficient basis for jurisdiction by New Jersey where an action based on a contract has substantial connection with New Jersey. In *Avdel,* the parties met to discuss the contract in New Jersey and the out-of-state defendant ordered goods which were to be manufactured or acquired by the plaintiff in New Jersey in order to fulfill his order.

In *Resin Research Laboratories, supra,* a New Jersey court held that where an out-of-state defendant contacted a New Jersey manufacturer in New Jersey and a contract was later written pursuant to which the plaintiff performed work in New Jersey, the requisite contacts to fulfill the constitutional due process requirement were fulfilled.

In the instant case, all of the moving defendants had substantial contacts with the State of New Jersey under *Avdel, supra,* and *Resin Research Laboratories, supra,* to warrant in personam jurisdiction over the defendants by the New Jersey court. These contacts included the negotiation of the distributorship agreement; the purchase of goods, which all of them knew to be manufactured, packaged, shipped and invoiced in New Jersey; the distributorship con-

tract itself to which Southern Rad, a corporation, in which they were the sole directors and principal stockholders, was a party; and the guarantee which was an essential precondition to entering into the distributorship agreement which committed RTI to extensive dealings with their corporation, Southern Rad. As the course of negotiation of this agreement clearly demonstrates, these defendants were the prime movers in arranging the Southern Rad distributorship and it was to them that RTI looked. Mr. Spearman attested to the distributorship agreement as secretary of Southern Rad and each of these defendants executed the guarantee which was physically annexed to the distributorship agreement and which by its terms specifically guaranteed obligations assumed under the agreement.

With regard to the guarantee agreement, the Court finds that it is dated August 13, 1975, as is the main agreement and numbered page "11," coming after page "10," the last page of the principal agreement. On its face, in the absence of specific facts or affidavits to the contrary, see Fed.R.Civ.P. 56(e), it is accepted by the Court as a valid guarantee agreement. The defendants "personally and in their individual capacities" guaranteed Southern Rad's obligations to Radiation Technology in the sum of $100,000.

In considering the guarantee with the foregoing activities of the movant-defendants in negotiating for Southern Rad and signing the contract, this Court finds that there are sufficient "contacts" of these defendants with the State of New Jersey to bind them under the guarantee to that state's in personam jurisdiction. *See, e. g., Strickland v. Foundation Life Insurance Co.,* 129 Ga. App. 614, 200 S.E.2d 306 (1973). The Court notes however that it does not construe the consent-to-jurisdiction provision in paragraph 18(c) of the Agreement as conferring New Jersey's jurisdiction over the defendants William

Price, Rodney Price and William L. Spearman, since this provision refers only to the "parties" to the agreement, *i. e.*, the corporate entities: Radiation Technology and Southern Rad.

■ Having resolved the personal jurisdiction issue against these defendants, the Court treats the issue of sufficiency of service of process.

As plaintiff noted above, these out-of-state defendants were served by registered mail pursuant to New Jersey R. R. 4:4–4(e) applicable to the Federal Courts by Fed.R.Civ.P. 4. New Jersey R.R. 4:4–4(e) provides as follows:

"(e) Substituted Service on Certain Individuals. Whenever it shall appear by affidavit of the attorney for the plaintiff or of any person having knowledge of the facts, that, after diligent inquiry and effort, an individual cannot be served in this State under any of the preceding paragraphs of this rule, then, consistent with due process of law, service may be made by mailing, by registered or certified mail, return receipt requested, a copy of the summons and complaint to the individual addressed to his dwelling house or usual place of abode or, with postal instructions to deliver to addressee only, to his place of business or employment. If the addressee refuses to claim or to accept delivery of registered or certified mail, service may be made by ordinary mail addressed to him at his dwelling house or usual place of abode. If for any other reason delivery cannot be made, then service may be made outside the State as provided in R. 4:4–5(a) upon any person upon whom service is au-thorized by the law of this State or of the state wherein service is effected."

The Marshal's return indeed shows that these defendants were served according to Rule 4:4–4(e). Where a "minimum contacts" analysis has been sustained for the assertion of in personam jurisdiction, the New Jersey courts on numerous occasions have upheld service of process under R.R. 4:4–4(e) [formerly R.R. 4:4–4(j)]. *DeFazio v. Wright*, 229 F.Supp. 111 (D.C.N.J. 1964); *Carlin v. Schuler*, 89 N.J.Super. 366, 215 A.2d 56 (1965); *J. W. Sparks & Co. v. Gallos*, 47 N.J. 295, 220 A.2d 673 (1966); *Knight v. San Jacinto Club, Inc.*, 96 N.J.Super. 81, 232 A.2d 462 (1967). *See also Jaffe v. Dolan*, 264 F. Supp. 845 (E.D.N.Y.1967).

Accordingly, the Court finds that the New Jersey District Court had jurisdiction to enter the default judgment registered in this Court and that service of process upon the movant defendants was proper according to the Constitution and New Jersey law. The defendants' motion for a declaratory judgment declaring the New Jersey judgment void and other injunctive relief is hereby ordered denied.

However, this ruling shall be without prejudice to the defendants' rights to raise, by motion for reconsideration in this Court or by motion to set aside default in the New Jersey court, the issue of the propriety and legality of the action of the Clerk of the Court of New Jersey in refusing to accept for filing defendants' motion to dismiss for failure to retain local New Jersey counsel, particularly where it appears one defendant at least may have been appearing in propria persona.