HANES SUPPLY CO., Inc., Appellant,

v.

VALLEY EVAPORATING COMPANY,
Appellee.

No. 17327.

United States Court of Appeals
Fifth Circuit.

Nov. 7, 1958.

Ben Kohler, Jr., Cohen & Kohler, Atlanta, Ga., for appellant.

Henry M. Quillian, Jr., Atlanta, Ga., Alan A. McDonald, Yakima, Wash., Bryan Carter, Ansley & Smith, Atlanta, Ga., for appellee.

Before RIVES, TUTTLE, and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment by the District Court for the Northern District of Georgia based on a default "foreign" judgment entered against the non-resident Georgia defendant in the United States District Court for the District of Oregon, and also, in a separate count, based on an ex parte arbitration award which was reduced to judgment in the Oregon proceedings.

■ Inasmuch as both parties and the District Court proceeded on the theory the other claim sued upon is merged in the judgment, only the count based on the "foreign" judgment need be considered. Since the enactment of the registration statute [1] it is not at all clear that a judgment creditor who has obtained a judgment in one district can make this judgment the basis of a plenary suit in another district. The legislative history of this section clearly indicates that the registration statute is intended to provide all the benefits deriving from a local judgment on a "foreign" judgment without subjecting either plaintiff or defendant to the expense of a second lawsuit. U.S.Code Congressional & Administrative News 1954, p. 3142, and see Juneau Spruce Corp. v. International Longshoremen & Warehousemen's Union, D.C.Hawaii, 128 F.Supp. 697, 700. However, see also Moore's Commentary on the U. S. Judicial Code, p. 385. Appellant here does not urge this as a basis to support its motion to dismiss. It is not jurisdictional, and we therefore will not pass upon this question.

The other issues presented on this appeal must ultimately be resolved, so we will proceed to deal with them in this case.

The main issue here is whether the Oregon judgment which is based on 9 U.S.C.A. § 2 and § 9,[2] authorizing serv-

---

1. 28 U.S.C.A. § 1963 provides as follows:

"§ 1963 Registration in other districts

"A judgment in an action for the recovery of money or property now or hereafter entered in any district court which has become final by appeal or expiration of time for appeal may be registered in any other district by filing therein a certified copy of such judgment. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner. * * *."

2. 9 U.S.C.A. § 2 and § 9 provide:

"§ 2. Validity, irrevocability, and enforcement of agreements to arbitrate

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. July 30, 1947, c. 392, § 1, 61 Stat. 669."

"9. Award of arbitrators; confirmation; jurisdiction; procedure.

"If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice

ice upon a non-resident of the district in a suit on an arbitration award, in which service was perfected on the non-resident defendant by mail and in which the latter made no defense, forecloses the defendant's right, when suit is later brought on such judgment in the district of its residence, to show that no agreement to arbitrate had been made by it, or if so, none to arbitrate at the place where this arbitration was held; and that thus the foreign judgment based on such purported arbitration is void for want of proper venue.

The facts necessary to an understanding of this issue are: On January 12, 1954, Valley Evaporating Co., of the state of Washington, hereinafter referred to as Valley, and the Dixson Company, of the state of Georgia, in a written contract,[3] signed on its behalf by G. A. Hanes, sold to Dixson a stated amount of green apple rings at an agreed price. On January 16, 1954, the Dixson Company wrote Valley a letter advising that "we have, as of January 1, 1954, sold our bakery department to Mr. G. A. Hanes, who will operate as Hanes Supply Co., Inc.," and further that "effective January 1, 1954, all invoices and transactions of any description should be in the name of Hanes Supply Company."[4] Hanes did not at any time, in writing or orally, expressly assume or agree to the terms of the written purchase order. Subsequently, shipment of the apples was completed and invoice covering them was mailed to Hanes. Hanes, on June 2nd, wrote complaining of the quality of the shipment, refusing 250 cases and requesting disposition by Valley. No reply having been received from this letter, counsel for Hanes addressed a second letter on June 22nd, and on July 28th a third letter, of which a copy was also sent to counsel for Valley, requesting disposition of the shipment. Valley disposed of the apples and billed Hanes for its loss. It thereupon notified Hanes that the contract of sale provided for arbitration "under National Wholesale Groceries Association at point nearest delivery point." This point, the letter states, "as recited on reverse of enclosed contract form, would, we believe, be New Orleans." The letter then continued:

"In checking with Northwest Dried Fruit Association office at Portland, we are advised there is no established arbitration board at New

---

of motion in an action in the same court. If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court. July 30, 1947, c. 392, § 1, 61 Stat. 669."

3. The critical portions of this contract as bearing on the issues before us are contained in six lines at the bottom of the order form as follows:

"Terms: No Guarantee against Price Decline.
Cash on delivery, or against documents, and terms of the Northwest Dried Fruit Association applicable contract.
2% ten days, F.O.B. factory.
2% two days, Delivered dock (Seattle or Portland)"

4. The entire letter is as follows:
"Valley Evaporating Co.
Yakima, Washington
"Gentlemen:
"This is to advise that we have as of January 1, 1954, sold our bakery department to Mr. G. A. Hanes who will operate as Hanes Supply Company, Inc.

"Mr. Hanes will operate from the lower level of our building and this part of the building carries an address 131 Mangum Street, S.W.

"We have enjoyed our relationship with you over the years and we know that you will experience the same fine relationship with Hanes Supply in the future.

"Effective January 1, 1954 all invoices and transactions of any description should be in the name of Hanes Supply Company.

"With our sincere thanks for your past cooperation and best wishes for your future, we are
"Very truly yours,
The Dixson Company,
(S.) H. R. Dixson,
(H. R. Dixson),
President."

Orleans. If it is agreeable to you, we therefore suggest that arbitration be held at New York City or Portland, Oregon."

The letter enclosed a document consisting of one legal size page of fine print entitled "Northwest Dried Fruit Contract." In a paragraph marked "Arbitration,"[5] provision is made for arbitration of disputes such as the one here in issue, in one of a number of cities, including Portland, Cincinnati, New York and New Orleans, and providing further that in the absence of agreement by the parties, arbitration is to be held "in the city which is nearest to destination of shipment."

This letter was followed by a letter dated July 26th, 1955, stating that since Hanes had not replied "we propose to submit our case to Portland, Oregon, and we will so proceed by August 15th un-

less we receive some reply from you in response to our letter of June 7th." Counsel for Hanes replied to these two letters on August 2nd, stating: "It is the position of Hanes Supply Company that it can in no way be compelled to submit to arbitration in connection with your alleged claim and that it can in no way be bound by any so-called arbitration award."

In this posture of affairs, Valley submitted its claim to an arbitration panel in Portland, Oregon, not participated in by Hanes; the arbitrators awarded the sum of $3,095.21, plus arbitration costs of $20.00. Thereafter Valley filed a suit in Portland on such award, purporting to act under the terms of 9 U.S.C.A. § 9 (see footnote 2, *supra*). Service was attempted by mail, as provided in Section 9, and the trial court thereafter, on motion by Valley for default judgment,

---

5. "Arbitration:—Except for the determination to be made by the State Board of Horticulture, or the State Department of Agriculture when no Board of Horticulture exists as provided for under subheading 'Future Sales' of Liability clause, any controversy arising under this contract shall be settled by arbitration in either New York, Chicago, San Francisco, Portland, Oregon, Baltimore, Boston, Buffalo, Cincinnati, Cleveland, Denver, Detroit, Indianapolis, Kansas City, Minneapolis, New Orleans, Oklahoma City, Omaha, Peoria, Philadelphia, Pittsburgh, Richmond, St. Louis, St. Paul, Seattle, or Toledo, Ohio. The particular city in which arbitration is to be held shall, in the absence of agreement, by the parties, be in the city which is nearest to destination of shipment. Arbitrations in New York shall be held before the Association of Food Distributors, Incorporated; in Chicago, before the Dried and Canned Foods Association; in Portland, Oregon, before the Northwest Dried Fruit Association; in the remaining cities, by the joint arbitration boards appointed by the National Wholesale Grocers' Association and the National Food Brokers' Association. A written statement of facts and anything else that may have proper bearing on the case, together with written argument thereon, may be presented to the Secretary of the Association or the Chairman of the Arbitration Board, as the case may be, and shall by him be submitted in its entirety to the arbitrators, but no oral presentation shall be made unless the parties agree thereto, and same is permitted or requested by the arbitrators. If the decision is in favor of Seller, invoice, if unpaid, shall become due and payable at once. If decision is against Seller, arbitrators shall determine amount of allowance, which, if draft has been paid, shall be immediately refunded by Seller and if draft has not been paid, shall be deducted from invoice and the correct amount paid immediately. If arbitrators find bad faith, or gross carelessness on the part of Seller they may either allow rejection, award damages therefor or require another tender in compliance with this contract. Arbitration shall be held upon not less than one per cent (1%) unbroken and unopened packages. The arbitrators shall assess costs of arbitration and the decision shall be final and binding on both parties who hereby agree to comply therewith. Failure of Seller to ship or Buyer to accept shall be considered a dispute to be settled by arbitration. Each party hereto hereby agrees that a judgment of the United States District Court in and for the district within which the award was made, shall be entered upon the award made, but the State Courts shall have sole jurisdiction of enforcing this agreement to arbitrate and any arbitration award in all cases in which the United States District Court shall not have jurisdiction."

made its findings of fact and conclusions of law and entered judgment against appellant Hanes for $3,115.21. This judgment, not having been paid by Hanes, was made the basis of the present suit in the District Court for the Northern District of Georgia.

Hanes filed its motion to dismiss, supported by affidavit denying that it had contracted to submit to arbitration and contending that the arbitration agreement, if valid, required arbitration in the listed city nearest Atlanta, to-wit, Cincinnati, Ohio,[6] and that it had, under no circumstances, agreed to an arbitration in Portland, Oregon; thus it had not "specified," as required in Section 9, the Oregon District Court; that therefore, since the venue of an action against a non-resident, permitted as an exception to the general federal venue statutes, depends upon the existence of "a written provision in * * * a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract * * *" and that such agreement also specifies the court which entered the judgment, the existence of these facts is "jurisdictional" in the sense that the Oregon court has no power to issue process to a non-resident without the existence of such facts; that, therefore, the truth or falsity of such facts may be inquired into by the second court.

The appellee countered with its affidavit which asserted substantially the facts which have already been recited and which concluded that Hanes was a party to the "written" contract, and that such contract incorporated by reference the separate agreement to arbitrate.

The trial court overruled the defendant's motion to dismiss, treated as motion for summary judgment, as contemplated under Rules 12(b) and 56, F.R.C.P., 28 U.S.C.A. Holding that the statute expressly provides for service on a non-resident, the trial court said: "The above language is clear and not am-biguous, although it does mark a departure by the Congress from its policy, existing since the establishment of this nation, of not giving to federal district courts jurisdiction for judgments in personam against non-residents of the state, upon personal service perfected upon them in the district where they reside." There can, of course, be no question as to the correctness of this statement. The difficulty, however, is that the trial court did not consider, and therefore did not pass upon, appellant's contention that Section 9 of the Act never came into play at all because appellant denied the existence of any written contract binding on it agreeing to an arbitration and, a fortiori, the existence of any contract which specified Portland as the place for any arbitration, or the district court of the district of Oregon as the court which could enter a final judgment as contemplated in Section 9; that without the existence of such an agreement the provisions of that section for service on a non-resident never became applicable, and since the defect in service under the usual venue and service requirement were not waived by a voluntary appearance, the Oregon district court never obtained jurisdiction over the person of appellant in order to make a binding determination on the existence of the agreement to arbitrate.

The trial court's conclusion, "It was within the jurisdiction of the Oregon court to determine the meaning of the contract between the parties, and it did so," is correct only if the Oregon court properly had the non-resident appellant before it, and this it did not have unless in fact there was a written agreement to which appellant was a party to conduct the arbitration at the place which in turn became the place where the district court presided.

In light of the recognized general principle in the federal system that "apart from specific exceptions created by Congress the jurisdiction of district courts is territorial." Ahrens v. Clark,

---

6. This Court will take judicial notice of the fact that Cincinnati is the nearest of the named cities to Atlanta.

335 U.S. 188, 190, 68 S.Ct. 1443, 1444, 92 L.Ed. 1898, holding on this record that the Oregon district court acquired the right to proceed to a final judgment which foreclosed to the defendant the right ever to challenge the existence of the peculiar circumstances which alone gave that court the right to bring it from Atlanta to Portland, Oregon, and there respond, would be an extreme case of "lifting oneself by his own bootstraps." The Oregon court could acquire jurisdiction over the person of a non-resident only if there existed a written contract for arbitration. The plaintiff sued on a written contract not signed by the non-resident defendant, but which, it was alleged, had been "assumed" by it. The complaint in the Oregon suit is not in the record before us, but it is apparent that based on some ex parte representations to the court, the court determined that these fact allegations were true and this supported the attempted service on the non-resident by mail, which service in turn made the defendant amenable to the court's final judgment, forever foreclosing it, so says the appellee, from the right to contest the jurisdictional facts.

■ The question here raised is not one of due process, as is the case in which a state legislature seeks to give extraterritorial effect to its local judgments. Cf. O'Boyle v. Bevil, 5 Cir., 259 F.2d 506. This is so because Congress has the power to authorize a suit under federal law, such as here involved, in any inferior federal court. "Congress has power, likewise, to provide that the process of every District Court shall run into every part of the United States." Robertson v. Railroad Labor Board, 268 U.S. 619, 622, 45 S.Ct. 621, 622, 69 L.Ed. 1119. The question is similar to it, however, because the power of foreign service of process does not exist unless by the terms of a "specific exception" created by Congress. Ahrens v. Clark, supra.

Here such specific exception may exist if the facts as alleged by the plaintiff are true, contrariwise if they are not true. We think, therefore, that these facts are strictly jurisdictional in nature as distinguished from quasi-jurisdictional facts, a distinction so fully discussed in Noble v. Union River Logging Railroad Co., 147 U.S. 165, 173, 174, 13 S.Ct. 271, 37 L.Ed. 123. See also 7 Moore's Federal Practice, pp. 264, 265.

■ Absent an agreement to arbitrate in the place which alone would give the Oregon District Court jurisdiction, that court's process was void in Georgia. Absent valid service the non-resident defendant was not before the court, and no adjudication in personam could be binding as to it. It must, therefore, be open to the district court in the Northern District of Georgia to inquire into the truth or falsity of the jurisdictional allegations which have not been adjudicated by a court having jurisdiction of one of the parties.[7]

■ As we have indicated, the existence vel non of a "written provision in * * * a contract * * * to settle by arbitration * * *" (Section 2, footnote 2, *supra*), and specifying the

7. Had the appellant filed even a special appearance in the Oregon District Court to contest the jurisdictional allegation, it would have been bound by an adverse decision by that court and could not again relitigate the issue, since the rule of res adjudicata would apply. See Baldwin v. Iowa State Traveling Men's Association, 283 U.S. 522, on page 525, 51 S.Ct. 517, on page 518, 75 L.Ed. 1244, where the Supreme Court states the principle we apply here, where there was no appearance: "It had the election not to appear at all. If, in the absence of appearance, the court had proceeded to judgment, and the present suit had been brought thereon, respondent could have raised and tried out the issue in the present action, because it would never have had its day in court with respect to jurisdiction. Thompson v. Whitman, 18 Wall. (85 U.S.) 457, 21 L.Ed. 897; Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565; Hart v. Sansom, 110 U.S. 151, 3 S.Ct. 586, 28 L.Ed. 101; Wetmore v. Karrick, 205 U.S. 141, 27 S.Ct. 434, 51 L.Ed. 745; Bigelow v. Old Dominion Copper [Mining & Smelting] Co., 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009; McDonald v. Mabee, 243 U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608."

Oregon District Court is a fact question. Whether it is a fact question that can be resolved by the District Court on the documents themselves or is one that requires oral testimony, we need not here decide, because the trial court did not address itself to that question. That court excluded itself from any right to pass on this question. In order that this jurisdictional question may be resolved in the first instance by the trial court in light of the applicable local law and that it may thereafter grant such relief as is demanded, the judgment is reversed and the case remanded.