UNITED STATES of America

v.

Lawrence B. WOLFORD, Appellant.

UNITED STATES of America

v.

Thomas FLURRY, Appellant.

Nos. 24110, 24200.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 25, 1971.

Decided March 25, 1971.

J. Skelly Wright, Circuit Judge, concurred and filed opinion.

Mr. Sol. Z. Rosen, Washington, D. C. (appointed by this court), for appellant in No. 24,110.

Mr. Ralph N. Albright, Jr., Washington, D. C. (appointed by this court), for appellant in No. 24,200.

Mr. Jerome Wiener, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before WRIGHT and MacKINNON, Circuit Judges, and GIGNOUX,* U. S. District Judge for the District of Maine.

MacKINNON, Circuit Judge:

Appellants here were charged with several offenses arising out of the hijacking of a truckload of liquor. The specific charges against both appellants were kidnaping [1] (D.C.Code § 22–2101), armed robbery [2] (D.C.Code §§ 22–2901 & 3202), robbery (D.C.Code § 22–2901) and assault with a dangerous weapon (D.C.Code § 22–502). In addition, appellant Flurry was also charged with carrying a dangerous weapon (D.C.Code § 22–3204). Both appellants were convicted on all counts, except the robbery count, and each was given concurrent sentences, the maximum of which was from ten years to life on each of the kidnaping and armed robbery convictions. On this consolidated appeal they attack the legality of the kidnaping charge as not being a separate offense from robbery under the circumstances here present. They also assert that prejudicial error occurred during the trial when they learned that a copy of a radio transcript they had subpoenaed had one page missing, and when the jury misunderstood the court's instructions and was sent back to reconsider its original verdict. In addition Flurry raises an identification question and Wolford questions the sufficiency of the evidence to support his conviction, which is based principally on the theory of aiding and abetting. We affirm as to all counts.

I

Shortly after 10:30 a. m. on June 5, 1969 at the corner of Montana Avenue and Bladensburg Road, N.E. in the District of Columbia, Rufus Wilson, Jr. (a helper on the truck) and Robert L. Clark (driver) were returning to their truck after having stopped for a sandwich. They were in the process of delivering a truckload of liquor for the International Distributors Corporation and were driving a truck owned by that company.

As they approached the truck they were accosted by three men, one of whom (later identified by Wilson as Flurry) put something in Wilson's back that felt like a gun and they were both told that they were going to be taken "for a little ride." The group of three was composed of Flurry (later identified), an unidentified short man and a third short man who was wearing a *blue* jacket. The participants in the crime then took the keys to the truck from Clark and two of the hijackers (one later identified as Flurry) forced both Wilson (at least Wilson was a non-consenting victim) and Clark into the back seat of a brown Mustang car. The hijacker wearing the *blue* jacket was left with the truck and the keys thereto. Flurry then drove the Mustang to Rock Creek Park while his accomplice who accompanied him sat in the front passenger seat and held a gun on Wilson and Clark in the back seat. We take judicial

* Sitting by designation pursuant to 28 U.S.C. § 292(c) (1964).

1. Count II:
   On or about June 5, 1969, within the District of Columbia, Thomas Flurry, John U. Lindsay and Lawrence B. Wolford, feloniously and unlawfully, seized, confined, kidnapped and carried away Rufus Wilson, Jr., with intent to hold and detain the said Rufus Wilson, Jr. for reward, ransom or otherwise, to wit, for the purpose of stealing property of another.

2. Count IV:
   On or about June 5, 1969, within the District of Columbia, Thomas Flurry, John U. Lindsay, and Lawrence B. Wolford while armed with dangerous weapons, that is, pistols, by force and violence and against resistance and by putting in fear, stole and took from the person and from the immediate actual possession of Rufus Wilson, Jr., property of International Distributing Corporation of the value of about $13,110.98, consisting of a truck containing alcoholic beverages of the value of $13,110.98.

notice of the geographical fact that the distance from the intersection of Montana Avenue and Bladensburg Road, N.E. to the nearest point in Rock Creek Park is 3.8 miles by direct line through built-up urban areas.[3] After about forty-five minutes or an hour from the time they were abducted, Wilson and Clark were released in Rock Creek Park. About this time Wilson saw one Lindsay driving a Buick Electra 225 which passed them in the park. Wilson immediately after his release left the park, went to the 6th Precinct Police Station and reported the crime. The police immediately broadcast a lookout for the stolen truck and for the three men participating in the hijacking.

Detective Billy E. Burwell also testified that he was driving a police car (apparently unmarked) and that "I guess, between 10:30 and 11 o'clock * * * I heard a lookout broadcast over the police radio" with respect to the liquor truck. Shortly thereafter at Georgia Avenue and Princeton Place he observed the truck that had been hijacked coming out of an alley leading to a wig shop run by one Sa-An Kubeyinji (hereafter Sa-An). At that time Burwell also identified Wolford (whom he had seen on prior occasions) as the driver of the truck and also observed that he wearing a *blue* T-shirt or knit shirt. Burwell then started to follow the truck and as he did so, he noticed that a Buick Electra 225 was parked near the alley and that when the truck passed the Buick, the driver of the truck beckoned to the driver of the Buick. After the truck passed, trailed by Burwell, the Buick swung in behind the two vehicles and followed them. During this meeting of the truck and the Buick, Detective Burwell recognized Wolford (the truck driver) and Flurry (a passenger in the Buick) as men he had seen many times before in his assigned area.

With the truck leading and Detective Burwell and the Buick following, the three vehicles eventually reached the 500 block on Rock Creek Church Road where they stopped. At this time Wolford, wearing brown cloth gloves, got out of the truck and Detective Burwell identified himself as a police officer and attempted to stop Wolford, but he fled. Pursued by Burwell, Wolford ran across the back yards of several homes and eventually into a private home where he was arrested by Burwell. At the time Wolford was arrested he had shed the blue shirt and was wearing a black silk undershirt. A short time later one John Lindsay was arrested (by two other cruising detectives) while driving the Buick.

Two other circumstances which incriminate Flurry and Wolford separately involve one Sa-An and his wig shop which was located on Georgia Avenue. It was into the basement of the wig shop that the load of liquor was transferred during the interval between the hijacking of the truck shortly after 10:30 A.M. and the time Detective Burwell discovered the truck exiting from the alley leading to the wig shop.

The first incident involving Sa-An, which incriminates appellants, occurred on June 5, 1969, following Lindsay's arrest that day in the Buick. This Buick was owned by Flurry and when Flurry found out the circumstances of Lindsay's arrest, Flurry asked Sa-An to take the registration for Flurry's 1969 Buick to the police station

> to give it to John Lindsay. I [Sa-An testifying] said, "Why?" He said, "He was arrested without registration." I said, "Why don't you go yourself?" He said, "I dont want to go to the station myself, because I will be identified."

Sa-An did not comply with Flurry's request. Later, when the hijacked liquor

---

3. Stift v. Lynch, 267 F.2d 237, 238 n. 2 (7th Cir. 1959) (appellate court took judicial notice of the distance between two towns) ; Hanes Supply Co. v. Valley Evaporating Co., 261 F.2d 29, 22 n. 6 (5th Cir. 1958) (appellate court took judicial notice of the fact that Cincinnati was the closest of several named cities to Atlanta).

was discovered in the basement of Sa-An's wig shop, he was arrested and jailed on a charge of receiving stolen property. While he was in jail on June 6th, Sa-An testified that Wolford told him:

> * * * I [referring to Sa-An] shouldn't worry. I wouldn't have any problem, because I wasn't there when it was put down in the basement and moreover he [Wolford] wouldn't be and that there is one person who is identified when he comes to the lineup likely to identify him, that is the older driver [Wilson]. The younger one [Clark] would not identify him, because the younger one [Clark] is in the same gang with him.

Q. He said the younger one was in the same gang with him?

A. Yes.

Q. What did he say about the older man, if anything?

A. The older man should attempt to identify him, they would get rid of him.

## II

Appellants' principal contention on this appeal is that the seizure and detention of the victim or victims of the armed robbery, who were abducted for the purpose of effectuating the robbery, will not support a conviction of the separate offense of kidnaping under D.C.Code § 22–2101 (1967).[4] Their argument is based upon a claim that Wilson[5] was forced into the Mustang and carried to Rock Creek Park solely to facilitate the success of the hijacking, and this undertaking should be viewed as an integral part of the armed robbery and not as an independent act of kidnaping.

The first question such contention presents is whether the facts of the present case are comprehended within the literal wording of the District of Columbia kidnaping statute. So far as pertinent to the resolution of that question, section 22–2101 prohibits the seizure and detention of any person against his will "for ransom or reward *or otherwise.*" For all practical purposes, the conduct prohibited by section 2101 is identical to that proscribed by the Federal Kidnaping Act, as presently worded, 18 U.S.C. § 1201 (1964),[6] with the exception of the requirement of the federal statute that the victim be transported in interstate or foreign commerce. For this reason, and because both statutes were enacted by Congress, decisions construing the meaning and application of the Federal Kidnaping Act may be resorted to as an aid

---

4. Whoever shall be guilty of, or of aiding or abetting in, seizing, confining, inveigling, enticing, decoying, kidnaping, abducting, concealing, or carrying away any individual by any means whatsoever, and holding or detaining, or with the intent to hold or detain, such individual for ransom or reward or otherwise, except, in the case of a minor, by a parent thereof, shall, upon conviction thereof, be punished by imprisonment for life or for such term as the court in its discretion may determine. This section shall be held to have been violated if either the seizing, confining, inveigling, enticing, decoying, kidnaping, abducting, concealing, carrying away, holding, or detaining occurs in the District of Columbia. If two or more individuals entered into any agreement or conspiracy to do any act or acts which would constitute a violation of the provisions of this section, and one or more of such individuals do any act to effect the object of such agreement or conspiracy, each such individual shall be deemed to have violated the provisions of this section.
D.C.Code § 22–2101 (1967).

5. We eliminate any reference to Clark as an unwilling victim since there was some evidence that he may have aided those charged in perpetrating the offenses.

6. Whoever knowingly transports in interstate or foreign commerce, any person who has been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away and held for ransom or reward or otherwise, except, in the case of a minor, by a parent thereof, shall be punished (1) by death if the kidnaped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed.
18 U.S.C. § 1201(a) (1964).

in determining the meaning of the similar language employed in the District statute.

As originally enacted, the Federal Kidnaping Act only prohibited seizure and detention "for ransom or reward," 47 Stat. 326 (1932). The language "for ransom or reward" was soon amended to read "for ransom or reward *or otherwise*," 48 Stat. 781 (1934) (emphasis added). Shortly after the adoption of this amendment, the Supreme Court in Gooch v. United States, 297 U.S. 124, 56 S.Ct. 395, 80 L.Ed. 522 (1936), pointed to the addition of "or otherwise" as indicating a congressional intent that the statute be given a broad application. In *Gooch*, the defendant was faced with the prospect of arrest by "peace officers" of the state of Texas, and to avoid this the defendant "resisted and disarmed the officers, unlawfully seized and kidnaped them and transported them by automobile from Texas to Oklahoma, and liberated them in the latter State." 297 U.S. at 125, 56 S.Ct. at 396. This was held to constitute kidnaping prohibited by the statute, and the language of the Court's opinion broadly implied that any detention "done with the expectation of benefit to the transgressor" was within the meaning of the statute. 297 U.S. at 128, 56 S.Ct. at 397. This broad interpretation of the kidnaping act was reaffirmed by the Supreme Court in United States v. Healey, 376 U.S. 75, 81–83, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964) which upheld a two-count indictment charging kidnaping,[7] and air piracy[8] where the accused at gunpoint kidnaped the pilot of a private airplane and compelled him to transport them from Florida to Cuba. The opinion in the case reaffirmed the reasoning of *Gooch*.

A broad reading of the Federal Kidnaping Act has been almost uniformly adhered to by the federal courts from *Gooch* to the present time. *E. g.*, Gawne v. United States, 409 F.2d 1399 (9th Cir. 1969), cert. denied, 397 U.S. 943, 90 S.Ct. 956, 25 L.Ed.2d 123, rehearing denied, 397 U.S. 1059, 90 S.Ct. 1368, 25 L.Ed. 2d 680 (1970) (victim forced to assist in "unlawful flight from Rawlings, Wyoming, to avoid prosecution for grand larceny"); United States v. Stubblefield, 408 F.2d 309 (6th Cir. 1969) (abduction to facilitate escape following a jail break); United States v. McGrady, 191 F.2d 829 (7th Cir. 1951), cert. denied *sub nom.*, Paulding v. United States, 342 U.S. 911, 72 S.Ct. 305, 96 L.Ed. 681 (1952) (same); Hayes v. United States, 296 F.2d 657 (8th Cir. 1961), cert denied, 369 U.S. 867, 82 S.Ct. 1033, 8 L.Ed.2d 85 (1962) (abduction of police officer and business cashier to escape arrest for forgery); Brooks v. United States, 199 F.2d 336 (4th Cir. 1952) (abduction by Klansmen of couple who were transported to lonely spot and given a flogging, told to attend church and to stop living together and making liquor); United States v. Bazzell, 187 F.2d 878 (7th Cir.), cert. denied, 342 U.S. 849, 72 S.Ct. 73, 96 L.Ed. 641 (1951) (victim forcibly held and transported interstate for purpose of placing her in a house of prostitution); Wheatley v. United States, 159 F.2d 599 (4th Cir. 1946) (to furnish interstate transportation); Langston v. United States, 153 F.2d 840 (8th Cir. 1946) (victim held for purpose of robbing him and to prevent him from reporting the theft and transportation of an automobile); Poindexter v. United States, 139 F.2d 158 (8th Cir. 1943) (transportation of female for purpose of

---

7. Under 18 U.S.C. § 1201, *supra* note 6.

8. (1) Whoever commits or attempts to commit aircraft piracy, as herein defined, shall be punished—

 (A) by death if the verdict of the jury shall so recommend, or, in the case of a plea of guilty, or a plea of not guilty where the defendant has waived a trial by jury, if the court in its discretion shall so order; or

 (B) by imprisonment for not less than twenty years, if the death penalty is not imposed.

 (2) As used in this subsection, the term "aircraft piracy" means any seizure or exercise of control, by force or violence or threat of force or violence and with wrongful intent, of an aircraft in flight in air commence.
49 U.S.C. § 1472(i) (1964).

rape); Miller v. United States, 123 F.2d 715 (8th Cir. 1941), rev'd on other grounds, 317 U.S. 192, 63 S.Ct. 187, 87 L.Ed. 179 (1942) (for purpose of holding stepdaughter in involuntary servitude); United States v. Parker, 103 F.2d 857 (3d Cir.), cert. denied, 307 U.S. 642, 59 S.Ct. 1044, 83 L.Ed. 1522 (1939) (victim seized and held to force him to confess to the Lindbergh kidnaping, "and thereby enhance the reputation of Ellis H. Parker as a successful and competent detective, whereby his services would come to be in great demand"); *contra*, United States v. Varner, 283 F.2d 900 (7th Cir. 1960) (child abduction as a consequence of "defendant's maternal instinct and desire to have a child of her own" did not constitute kidnaping).

Under the Federal Kidnaping Act, it is thus settled that "involuntariness of seizure and detention * * * is the very essence of the crime of kidnaping," Chatwin v. United States, 326 U.S. 455, 464, 66 S.Ct. 233, 237, 90 L.Ed. 198 (1946), and under *Gooch* and *Healey* that the motive behind the kidnaping is unimportant, so long as the act was "done with the expectation of benefit to the transgressor," 297 U.S. at 128, 56 S.Ct. at 397. The Third Circuit has gone so far as to state:

> We think that Congress by the phrase "or otherwise" intended to include any object of a kidnaping which the perpetrator might consider of sufficient benefit to himself to induce him to undertake it.

United States v. Parker, *supra*, 103 F.2d at 861.

Until fairly recently, the District of Columbia kidnaping statute contained only the more restrictive "for ransom or reward" language of the Federal Kidnaping Act as originally enacted. However, in 1965 section 2101 was amended, 79 Stat. 1308 (1965), to read as at present—"for ransom or reward *or otherwise.*" The committee report recommending the amendatory language stated:

> The third section of the bill broadens the existing kidnaping statute

which makes it unlawful only to hold a person for ransom or reward. This bill would make the statute applicable to those kidnapings in which the motive is lust, a desire for companionship, revenge, *or some other motive not involving ransom or reward.* In addition, this section would make the statute inapplicable to cases involving the taking of a minor child by one of the parents of such child. *The committee has been informed that these proposed changes in existing District of Columbia law will bring its statute into closer conformity with the Federal statute on kidnaping.*

H.R.Rep.No.1129, 89th Cong., 1st Sess. 2 (1965) (emphasis added). The language of the Senate report is essentially identical. S.Rep.No.623, 89th Cong., 1st Sess. 2 (1965). Thus there can be no doubt that the facts of the present case are within the literal language of section 22–2101. Wilson was detained and transported against his will to a different locale, several miles away, and the purpose of the detention—to facilitate the success of the hijacking—was to secure a benefit to appellants.

However, appellants' argument raises an additional objection to the validity of the kidnaping convictions in the present case. Even if the facts of the case are within the literal language of the kidnaping statute, it is asserted that the acts of kidnaping should be viewed as having merged into the armed robbery which supplies the central event out of which the present convictions arose. Support for this position assertedly is to be found in a number of state court decisions, principally People v. Daniels, 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225 (1969) (*in bank*); People v. Lombardi, 20 N.Y.2d 266, 282 N.Y.S.2d 519, 229 N.E.2d 206 (1967); People v. Levy, 15 N.Y.2d 159, 256 N.Y.S.2d 793, 204 N.E.2d 842, cert. denied, 381 U.S. 938, 85 S.Ct. 1770, 14 L.Ed.2d 701 (1965). These cases involved situations which were to a limited extent not unlike the present one—where the abduction occurred in connection with the commission

of some other offense, such as rape or robbery. In holding that the kidnaping was merged with the other offense or offenses committed, the stated design was "to prevent gross distortion of lesser crimes into a much more serious crime by excess of prosecutorial zeal." People v. Miles, 23 N.Y.2d 527, 539, 245 N.E.2d 688, 694, 297 N.Y.S.2d 913, 922, cert. denied, 395 U.S. 948, 89 S.Ct. 2028, 23 L. Ed.2d 467 (1969).

In evaluating the rationale of these state cases in the context of this appeal, it is not necessary to deal at length with the details of each case. First, the significance of *Levy* and *Lombardi*, the New York cases, is sharply limited by the subsequent decision in People v. Miles, *supra*. In *Miles*, there was an attempt to murder the victim in Newark, New Jersey, following which he was placed in the trunk of a car and transported about for some four hours, finally winding up in Harlem, New York. The New York Court of Appeals held:

> The more complicated nature of the asportation, with changes in purposes and direction, first to a place in New Jersey, and then to New York, for purposes connected with but not directly instrumental to the attempt to kill Brooks, removes this case from the exception of the *Levy-Lombardi* rule.

23 N.Y.2d at 539, 297 N.Y.S.2d at 921, 245 N.E.2d at 694. Although the above quote leaves the test to be applied in subsequent cases less than precisely defined, nevertheless the circumstances of the present case are analogous to the facts involved in *Miles*.

The significance of *Daniels*, the California decision, is also undercut by the California court's explicit limitation of its decision to cases where the literal act of kidnaping does "not substantially increase the risk of harm over and above

that necessarily present in the [underlying] crime * * * itself." 71 Cal. 2d at 1139, 459 P.2d at 238, 80 Cal.Rptr. at 904. In the circumstances of the instant case, the transportation of Wilson to Rock Creek Park, over a considerable distance and requiring considerable time, during all of which period the unidentified participant held Wilson in fear by means of the gun on his lap, certainly increased the risk of harm to which Wilson was subjected.[9]

Although the federal courts have not dealt with the merger question in a factual situation similar to that of the present case, decisions involving other factual patterns indicate that there was no merger here of the robbery and kidnaping offenses and thus support the application of the kidnaping statute to the facts of the case at hand. For example, the Supreme Court has held that where same is in accord with the intent of Congress a single act of an accused may be sufficient grounds to support convictions on separate counts of (1) sale of narcotics not "in pursuance of a written order," 26 U.S.C. § 4705(a) (1964); (2) sale of narcotics, not "in the original stamped package or from the original stamped package," 26 U.S.C. § 4704(a) (1964); and (3) facilitating concealment and sale of narcotics, 21 U.S.C. § 174 (1964), all arising from a single sale of narcotics. Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); *see also* Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L. Ed. 306 (1932). In the instant case we do not have a single act resulting in three crimes but varied acts resulting in two crimes which are defined by separate statutes that are not in *pari materia*. And United States v. Healey, *supra*, is an even better example of applying the kidnaping statute where another crime (air

---

9. The California Penal Code explicitly provides that "any person who kidnaps or carries away any individual to commit robbery" will be subject to a penalty of death or life imprisonment with no possibility of parole, if the victim suffers bodily harm. Where the victim is released unharmed, the penalty is life imprisonment but with the possibility of parole. Cal.Penal Code § 209 (West 1955). Thus, under California law, a literal kidnaping incident to the commission of a particular crime—robbery—*is* punishable as an additional and separate offense.

piracy) is committed contemporaneously with the kidnaping.

In only one significant instance, in cases involving federal bank robbery statutes, has the Supreme Court invoked the doctrine of merger. In Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), the Court held that the offense of entering a bank with the intent to commit robbery is merged with the completed robbery, both acts being prohibited by 18 U.S.C. § 2113(a). The Court stated:

> The gravamen of the offense is not in the act of entering, which satisfies the terms of the statute even if it is simply walking through an open, public door during normal business hours. Rather the heart of the crime is the intent to steal. This mental element merges into the completed crime if the robbery is consummated.

352 U.S. at 328, 77 S.Ct. at 407. The issue presented in *Prince*, however, was viewed solely as one controlled by the statutory interpretation based upon the legislative history of the act. With this fact in mind, applying the rationale of *Prince* to the facts of the present case suggests that merger is not indicated.

■■■ First, "the heart of the crime" of kidnaping is a seizure and detention against the will of the victim, Chatwin v. United States, *supra*, an element which certainly is not "the heart of the crime" of armed robbery. The mental element associated with the one is entirely separate and distinct from the mental element associated with the other. Secondly, the expressed intention of Congress when section 2101 was last amended was to broaden the coverage of the section to make it "applicable to those kidnapings in which the motive is lust, a desire for companionship, revenge, or some other motive not involving ransom or reward." H.R.Rep.No.1129, 89th Cong., 1st Sess. 2 (1965). Certainly a kidnaping for the purpose of committing rape was intended to be subject to the added penalty for violation of section 22–2101. It seems eminently reasonable to also perceive a legislative purpose to provide additional punishment for, and thus an additional deterrent against, the act of seizing, kidnaping and carrying away (etc.) the victim of a robbery to a different locale for the purpose of facilitating the success of the robbery and the escape of the perpetrators. In Langston v. United States, *supra*, which involved charges of interstate transportation of a stolen automobile and transportation of the victim in the same automobile for the purpose of preventing him from reporting the theft and transportation of the automobile, Judge Woodruff remarked:

> Here it is manifest that Congress intended to and did denounce the transporting of the stolen car as one crime for which a penalty should be assessed and the kidnapping by means of the car another and distinct crime for which it provided a different penalty.

153 F.2d at 841. On the facts of this case it is thus clear that two separate and distinct crimes were committed, i. e., kidnaping and armed robbery.

The present case does not evidence an "excess of prosecutorial zeal" such as troubled the New York courts. The forcible detention of Wilson both in time and place went far beyond the momentary detention necessarily associated with every robbery, and his removal to Rock Creek Park at gunpoint substantially increased the risk of harm over and above that necessarily incident to the offense of armed robbery. The application of both the kidnaping and armed robbery statutes to the facts of this case is thus entirely proper.

### III

We next consider Wolford's claim that there was insufficient evidence to sustain his conviction of kidnaping, armed robbery and assault with a dangerous weapon and that the trial court erred when it denied his motion for a directed verdict of acquittal on those counts. In support of his contention Wolford argues that he was not identified until after the truck was seen leaving the wig shop (without the liquor) and thus at most he was only an accessory after the fact (D.C.

Code § 22–106), a recipient of stolen property (D.C.Code § 22–2205), a driver of a stolen vehicle (D.C.Code § 22–2204) or a conspirator (18 U.S.C. § 371). The assertion that Wolford might be found to be a conspirator is almost tantamount to an admission that he was guilty of aiding and abetting, since, given the admitted overt acts in commission of the crime which were abundantly proven here, there is very little difference in the "advising" and "conniving" proscriptions of the District aiding and abetting statute [10] and in the prohibition of the applicable conspiracy statute which makes it illegal for one to "conspire" with another to commit any offense.[11]

In considering the attack on the sufficiency of the evidence to support Wolford's convictions we are required to take that view of the evidence which is most favorable to the Government. When this is done we must recognize that it would have been reasonable for the jury to find from a collocation of all the facts and circumstances here present that Wolford was a knowing participant in all the crimes of which he was convicted. The close timing and coordination between the hijacking, the kidnaping, the release of Wilson and Clark, the presence of the Buick driven by Lindsay in Rock Creek Park, the attempt to conceal the liquor in the basement of the wig shop, the rendezvous of the Buick and Flurry and Lindsay with Wolford in the truck at Georgia Avenue and Princeton Place, and the trailing of the truck by the Buick, indicates that all of the events had been carefully planned and prearranged by the participants so as to permit Wolford to take the valuable load of liquor in the truck from the place where it was hijacked to Sa-An's wig shop, conceal the liquor there and then make a final rendezvous with Lindsay and Flurry who would follow Wolford in the incriminating truck until it could be disposed of, when he would be picked up by them in the Buick and they would then make their escape. In our opinion, these facts justified the jury in finding that the kidnaping, the armed robbery and the use of the dangerous weapon had all been planned in advance and that Wolford (as the man in the *blue* jacket or shirt) actively participated in all those events in a manner indicating that he wished them to succeed and hence is guilty as a principal of all the crimes of which he was convicted. This conclusion is additionally fortified by the longstanding rule with respect to the permissible inference from the unexplained exclusive possession of recently stolen property (hereafter, the inference).[12] We have recently had occasion to point out that the basic authorization for this longstanding inference is nothing more than the application of the natural probative force of unexplained circumstantial evidence. United States v. Coggins, 140 U.S.App.D.C. 134, 136–138, 433 F.2d 1357, 1359–1361 (1970); United States v. Johnson, 140 U.S.App.D.C. 54, 57–64, 433 F.2d 1160, 1163–1170 (1970); Pendergrast v. United States, 135 U.S.App. D.C. 20, 416 F.2d 776, cert. denied, 395

10. D.C.Code § 22–105 (1967) provides:
   In prosecutions for any criminal offense all persons advising, inciting, or conniving at the offense, or aiding or abetting the principal offender, shall be charged as principals and not as accessories, the intent of this section being that as to all accessories before the fact the law heretofore applicable in cases of misdemeanor only shall apply to all crimes, whatever the punishment may be.

11. 18 U.S.C. § 371 provides:
   If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

12. The jury was instructed on this rule substantially in accordance with the instruction set forth in the appendix to Judge Robinson's opinion in Pendergrast v. United States, 135 U.S.App.D.C. 20, 34–35, 416 F.2d 776, 790–791, cert. denied, 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969).

U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969). And the result of the application of the inference is to *identify* the person who committed the acts. The Government here has made out a prima facie case of acts proving beyond a reasonable doubt that all the alleged crimes were committed by someone. In such circumstances the rule recognizes that it is a permissible inference from such facts and Wolford's exclusive possession of the truck within an hour of the hijacking that Wolford was the man who stole the truck and hence stole the liquor because the liquor was inside the truck when it was stolen. United States v. Coggins, *supra.*

The relationship of the inference to be drawn from such facts to the determination of the identity of the person who participated in the crimes here charged, where said crimes are related to the larceny which furnishes the basis for the inference, is similar to the relationship of the inference to the crime of burglary when the accused is found in recent possession of goods stolen from a dwelling house after a breaking and entering. Wharton comments on the application of the inference to be applied in such circumstances as follows:

> While the possession of recently stolen goods gives rise to an inference that the possessor has stolen the goods, it is not ordinarily proof or prima facie evidence of burglary. There should be some evidence of guilty conduct besides the bare possession of the stolen property, before the presumption of burglary is superadded to that of the larceny. However, such possession is evidence which may be considered with all the other circumstances of the case as bearing on the question whether the defendant committed the burglary, and there is authority that if the possession is unexplained it may support the conclusion of guilt of burglary. Moreover, when goods have been feloniously taken by means of a burglary, and they are immediately or soon after found in the actual and exclusive possession of a person who gives a false account, or refuses to give any account, of the manner in which the goods came into his possession, proof of such possession and guilty conduct may sustain the inference not only that he stole the goods, but that he made use of the means by which access to them was obtained.

2 Wharton's Criminal Law and Procedure § 411 (R. Anderson ed. 1957). We came to the same conclusion in United States v. Coggins, 140 U.S.App.D.C. 134, 433 F.2d 1357 (1970) and see cases cited in 2 Wharton's, supra, § 411, n. 2, p. 33. Thus here we recognize that Wolford's possession of the International Distributors truck, which had been stolen (with the liquor) within the hour, is not proof that the crimes of kidnaping, armed robbery and carrying a dangerous weapon (hereafter, "the other crimes") were committed. Additional evidence is needed over the bare possession of the truck before the possession of the truck under such circumstances may furnish the basis for identifying the person who committed the larceny and hence because of the relationship of that crime to the other crimes, also be identified as a participant in the other crimes. Such additional evidence of guilty conduct is present here in abundance in: (1) The probative force of all the testimony recounting the clocklike precision with which the principal features of the crimes were carried out, from which the conclusion is inescapable that the crimes were all carefully prearranged by the participants. (2) Wolford's rendezvous in the truck with Flurry and Lindsay in the Buick at Georgia Avenue and Princeton Place following the release of Wilson and Clark and the concealment of the liquor, the signal given by Wolford to the occupants of the Buick at that time and their trailing of Wolford to Rock Creek Church Road. (3) Wolford's flight when Detective Burwell merely identified himself as a police officer. (4) Wolford's admissions to Sa-An that Wilson (whom he described as the "older driver," and he was) could identify him as a partici-

pant in the crime, that he would be identified if he went to the Police Station, that he knew Sa-An was not present when the liquor was concealed, and the knowledgeable participation in the crime that could be inferred from the minute knowledge of the details of the crime implicit in these admissions. When the possession of the truck within an hour of the hijacking, etc., is considered with all the other direct and circumstantial evidence pointing to Wolford's participation in the other crimes as an aider and abettor, the inference from such possession *and evidence* permitted the jury to *identify* Wolford as the man in the *blue* shirt who stole the truck. And it is established by other evidence that the person who stole the truck also stole the liquor and was present and participated in the other crimes and hence aided and abetted their commission and is therefore guilty as a principal.

■ The Supreme Court recognized the application of this principle in McNamara v. Henkel, 226 U.S. 520, 524–525, 33 S.Ct. 146, 147, 57 L.Ed. 330 (1913), which involved a review of the adequacy of the evidence to support an order for extradition to Canada on a charge of burglary where the finding of probable cause was based upon the unexplained apparent possession of an automobile that had been taken without permission from a burglarized garage. The accused had been found a short distance from the garage, shortly after the burglary, attempting to start the car. In the opinion upholding the validity of the order of extradition, Mr. Justice Hughes remarked:

It is objected that while possession of property recently stolen may be evidence of participation in the larceny, the apparent possession of the automobile by the appellant affords no support for a conclusion that he committed the burglary, the crime with which he was charged. The permissible inference is not thus to be limited. The evidence pointed to the appellant as one having control of the car and engaged in the endeavor to secure the fruits of the burglarious entry. Possession in these circumstances tended to show guilty participation in the burglary. *This is but to accord to the evidence, if unexplained, its natural probative force.* [Citing cases] (Emphasis added.)

The opinion also cites the earlier case of Wilson v. United States, 162 U.S. 613, 617, 16 S.Ct. 895, 897, 40 L.Ed. 1090 (1896), in which a conviction for murder in Indian country was upheld wherein the jury was instructed that unexplained possession by the accused of the property of the murdered man could be used as the foundation for a presumption (inference) of the guilt of the defendant "upon the same principle if a certain man is charged with robbery or larceny." In the *Wilson* opinion, Mr. Chief Justice Fuller also referred to two earlier cases where the unexplained possession of stolen property in the hands of the accused was given probative force in returning guilty verdicts for arson and murder.

Possession of the fruits of crime, recently after its commission, justifies the inference that the possession is guilty possession, and, though only *prima facie* evidence of guilt, may be of controlling weight unless explained by the circumstances or accounted for in some way consistent with innocence. 1 Grennl.Ev. (15th ed.) § 34. In Rickman's Case, 2 East P.C. 1035, cited, it was held that on an indictment for arson, proof that property was in the house at the time it was burned, and was soon afterwards found in the possession of the prisoner, raises a probable presumption that he was present and concerned in the offense; and in Rex v. Diggles, (Wills Cir.Ev. *53,) that there is a like presumption in the case of murder accompanied by robbery. Proof that defendant had in his possession, soon after, articles apparently taken from the deceased at the time of his death is always admissible, and the fact, with its legitimate inference, is to be considered by the jury along with the other facts in the case in arriving at their verdict. Williams v. Commonwealth, 29 Pa. 102;

Commonwealth v. McGorty, 114 Mass. 299; Sahlinger v. People, 102 Ill. 241; State v. Raymond, 46 Conn. 345; Whart.Cr.Ev. § 762.

The trial judge did not charge the jury that they should be controlled by the presumption arising from the fact of the possession of the property of one recently murdered, but that they might consider that there was a presumption and act upon it, unless it were rebutted by the evidence or the explanations of the accused.

162 U.S. at 619–620, 16 S.Ct. at 898. What is referred to as a presumption, albeit a permissible one and not one that is required, is more properly denominated as an inference which the jury may rely upon but is not required to do so. That they may do so has been well recognized for a long time, as is evidenced by the authorities cited above, i. e., Rickman's Case, supra; Rex v. Diggles, supra; Wilson v. United States, supra; McNamara v. Henkel, supra, and United States v. Coggins, supra. Wolford's convictions are thus supported by the probative force of direct and circumstantial evidence and are additionally supported by the permissible inference which the jury was permitted to draw from the fact that Wolford was found within an hour of the larceny in exclusive possession of the recently stolen truck.

### IV

At the trial, Detective Burwell testified that he broadcast the license number of the Buick over the radio as he was following the truck and being followed by the Buick. Counsel for both appellants had subpoenaed the police to produce a typewritten transcript of the police radio broadcasts during the time in question, and the copy they received had one page of the transcript missing. The missing page contained the report by Detective Burwell of the Buick's license number. Apparently unaware that a page was missing, counsel for one appellant laid a foundation for impeaching Burwell on this point by asking him on cross-examination if he was sure that he made such a report. Before counsel could claim to the jury that the transcript contained no such report, at a bench conference it was discovered that one page was missing from counsel's copy of the transcript, and that the correct transcript would show that the report had been made by Detective Burwell as he had testified. The line of questioning was of course abandoned at this point.

Appellants contend that this is grounds for a mistrial, because the sequence of events in effect enhanced Burwell's credibility before the jury. However, Burwell's credibility was not actually in question and what appellants might have been driving at by these few questions was never brought home to the jury. Thus, any impact on the jury of the foundation questions was negligible. The trial judge was in a better position to gauge the impact on the jury, and we find no error in his refusal to grant a mistrial on the basis of this minor matter.

We also find that no substantial prejudice resulted to appellants by the in-court identification of Flurry by Wilson since we find that there was no substantial likelihood of irreparable misidentification, Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Nor do we find any error in the incident when the jury first reported its verdict and it was found that it had misinterpreted the court's instruction and concluded that it could only return verdicts on one count as to each appellant. It was correctly instructed by the court at that time and the rapidity with which the verdict on all counts was then returned does not indicate any failure on the part of the jury to give a full consideration to all the charges. In fact, since the jury had already been deliberating for "a reasonable [sic] lengthy period" and were fully polled on the verdict, the rapidity of the jury's action after they were sent back indicates that all charges had been fully discussed before they arrived at their decision on the kidnaping counts, for the foreman stated

in open court, following the court's instruction, that they had only "to make a vote." [13]

The judgments appealed from are accordingly

Affirmed.

J. SKELLY WRIGHT, Circuit Judge (concurring):

I am satisfied that the convictions on the armed robbery count should be affirmed. Since the sentences as to both appellants on the other counts run concurrently with that imposed for armed robbery, I find it unnecessary at this time to resolve the difficult issues they present. As to them I would follow the procedure suggested in United States v. Hooper, 139 U.S.App.D.C. 171, 432 F.2d 604 (1970).

13. Appellants' complaint about the form of the *Allen* [Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528] charge is of no moment since the charge has been upheld by this court on numerous occasions, and since our decision in United States v. Thomas (No. 22768, Nov. 6, 1970), which was vacated and is presently awaiting decision after *en banc* consideration, was prospective only.