Filed 11/21/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| WV 23 JUMPSTART, LLC, | C095046 |
|---|---|
| Plaintiff and Appellant, | (Super. Ct. No. 334-2010-00092428-CU-EN-GDS) |
| v. | |
| TIGER MYNARCIK, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Christopher E. Krueger, Judge.  Reversed.

Moskovitz Appellate Team and Myron Moskovitz for Plaintiff and Appellant.

Gordon Rees Scully Mansukhani, Matthew G. Kleiner, and Norvik Azarian for Defendant and Respondent.

In May 2010, the original plaintiffs in this matter (plaintiffs) obtained a sizable money judgment in Nevada state court against four defendants, including Tiger Mynarcik (Mynarcik), the respondent here.  In November 2010, the Sacramento County Superior Court granted plaintiffs' application to domesticate the Nevada judgment in California,

1

the state in which one of Mynarcik's codefendant's was last known to reside. The Nevada judgment expired by operation of law in 2016, while the sister-state judgment issued in California remained in effect.

In May 2020, plaintiffs assigned the California judgment to appellant WV 23 Jumpstart, LLC (Jumpstart). Two months later, Jumpstart renewed the California judgment and then applied to domesticate the renewed judgment back in Nevada, an action which Mynarcik vigorously challenged. In response, the Nevada court instructed Jumpstart to seek an order from the California courts regarding the validity of the renewed California judgment. In subsequent proceedings here, the Sacramento County Superior Court granted a motion by Mynarcik to quash entry of the renewed sister-state judgment for lack of personal jurisdiction over him.

On appeal, Jumpstart argues that the trial court erred in concluding that where a judgment creditor seeks to register a sister-state judgment in California, the judgment debtor must have "minimum contacts" with California. We agree with Jumpstart and therefore reverse the trial court's order.

FACTUAL AND PROCEDURAL HISTORY

The relevant facts in this appeal are not in dispute. In January 2009, the original plaintiffs, Galipeau Associates, Inc., and A.K. Partners, LLC, filed suit in Clark County, Nevada, seeking a deficiency judgment against defendant Pahrump 161, LLC (Pahrump), and individual defendants Mynarcik, James W. Scott, and Brock E. Metzka. Following a bench trial, the Nevada state court found that Mynarcik and Metzka guaranteed a loan of $1.8 million from plaintiffs to Pahrump to develop residential real estate in Nevada, secured by a deed of trust. The individual defendants, Mynarcik, Scott, and Metzka, executed guarantees on the loan. Thereafter, Pahrump defaulted on the loan. In May 2010, the Nevada court entered a judgment for $1,346,474.25 against Pahrump and the three guarantors. In August 2010, the Nevada judgment was amended to include attorney fees, costs, and accrued interest, which increased the judgment to $1,584.893.71.

2

In November 2010, seeking to have the judgment domesticated in California, plaintiffs applied for entry of judgment on a sister-state judgment in the Sacramento County Superior Court pursuant to Code of Civil Procedure section 1710.10 et seq.[1] Mynarcik was personally served with the application to domesticate the judgment and did not challenge it. As required by section 1710.25, the Sacramento County Superior Court clerk entered the amended $1.58 million judgment in favor of plaintiffs.

Thereafter, Mynarcik's codefendants, Scott and Metzka, settled their debts to plaintiffs for approximately $462,000 and $39,000, respectively. Mynarcik's remaining codefendant, Pahrump, filed a petition for Chapter 7 bankruptcy and paid plaintiffs nothing.

In 2016, the Nevada judgment's six-year enforcement period expired by statute, and plaintiffs did not seek to renew it. The California judgment remained valid and enforceable. However, plaintiffs did not pursue Mynarcik in California to collect on the judgment.

In May 2020, plaintiffs assigned the California judgment to Jumpstart. In July 2020, Jumpstart applied to renew the California judgment in the Sacramento County Superior Court, listing the modified balance as $2,611,083.08 to reflect additional accrued interest. Mynarcik was served by mail with the notice of renewal at his Nevada home. He did not respond or otherwise challenge renewal of the judgment.

In December 2020, Jumpstart applied in Nevada state court to domesticate the renewed California judgment. In response, Mynarcik moved to "quash, to vacate, and to declare the purported registration of an old and expired transplanted Nevada judgment null and void." For the first time, he also challenged the validity of the California judgment. On April 12, 2021, the Nevada court issued a stay, pending a determination of

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

the validity of the California judgment with respect to Mynarcik. In doing so, it stated: "The registration of the renewed California Judgment in Nevada will then be deemed valid and enforceable in Nevada if a California court concludes or declares either one of the following: [¶] A. Mynarcik waived his right, under California law, to challenge the renewed California Judgment; or [¶] B. An amendment to the renewed California Judgment would relate back to the California Judgment's renewal date."

In response to the Nevada court's directions, Jumpstart moved for an order confirming that Mynarcik had forfeited his right to challenge the renewed judgment or, in the alternative, a nunc pro tunc order amending the renewed judgment in the Sacramento County Superior Court. Mynarcik opposed Jumpstart's motion, filed his own motion to quash the California judgment for lack of personal jurisdiction, as well as a motion to vacate the California judgment. Jumpstart opposed Mynarcik's motions.

The trial court granted Mynarcik's motion to quash the California judgment and denied Jumpstart's motion as moot. In doing so, it reasoned that "[w]ithout the constitutionally required 'minimum contacts' with California, [the Sacramento Superior Court] did not possess personal jurisdiction over Mr. Mynarcik in 2010 and thus, even though the judgment creditors may have served on Mr. Mynarcik in Nevada their 2010 application to register the Nevada judgment in California, Mr. Mynarcik was under no legal obligation to challenge or otherwise respond to the 2010 domestication proceedings in California due to this state's lack of personal jurisdiction over him." It further found that, "[f]or these same reasons, Mr. Mynarcik was likewise under no legal obligation to challenge or respond to Jumpstart's more recent 2020 application to renew the California judgment regardless of the fact that it was mailed to Mr. Mynarcik's residence in Nevada and/or that the Nevada judgment had expired in 2016. California's lack of personal jurisdiction over Mr. Mynarcik rendered the California renewal proceedings 'a nullity' at least as to Mr. Mynarcik. [¶] . . . [¶] Thus, to the extent the 2010 judgment domesticated in California and renewed in 2020 purports to be a judgment against Mr.

4

Mynarcik[,] who has no demonstrable 'minimum contacts' with the State of California, the judgment must be and hereby is vacated due to this Court's lack of personal jurisdiction over Mr. Mynarcik." Jumpstart timely appealed.[2]

DISCUSSION

There is no dispute that the original Nevada judgment was valid, and that the court had jurisdiction over Mynarcik in that state. There also is no dispute that Mynarcik lacks " 'minimum contacts' " with California, and thus California courts could not obtain jurisdiction over Mynarcik under a traditional personal jurisdiction analysis. In view of these uncontested matters, the issue before us presents a novel question of law, which we review de novo (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191): Must a California court have personal jurisdiction over a judgment debtor before a court clerk may register a sister-state judgment in California? We conclude that the answer is no.

A. *Applicable legal principles*

1. *Full faith and credit clause*

Article IV, section 1 of the United States Constitution provides that "[f]ull faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." In accordance with this section, "[a] final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land. For claim and issue preclusion (res judicata) purposes, in other words, the judgment of the rendering

---

[2]     Because we find no relevance in the First Judicial District Court of the State of New Mexico for the County of Santa Fe's September 17, 2021 order granting Mynarcik's second motion for summary judgment and the certified transcript of the motion hearing in the case titled *WV 23 Jumpstart, LLC v. Mynarcik et al.*, case No. D-101-CV-2020-02540, we deny Mynarcik's request for judicial notice of these materials. (Evid. Code, § 452, subd. (d).)

5

State gains nationwide force." (*Baker v. General Motors Corp.* (1998) 522 U.S. 222, 233 [139 L.Ed.2d 580, 592], fn. omitted.) "Moreover, ' "[while] it is established that a court in one State, when asked to give effect to the judgment of a court in another State, may constitutionally inquire into the foreign court's jurisdiction to render that judgment, the modern decisions of [the Supreme] Court have carefully delineated the permissible scope of such an inquiry. From these decisions there emerges the general rule that a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." ' " (*Bank of America v. Jennett* (1999) 77 Cal.App.4th 104, 113 (*Bank of America*).) Thus, the Constitution requires that "a judgment entered by one state must be recognized by another state if the state of rendition had jurisdiction over the parties and the subject matter and all interested parties were given reasonable notice and an opportunity to be heard." (*Thorley v. Superior Court* (1978) 78 Cal.App.3d 900, 907.)

> 2. *California's Sister State Money Judgments Act (§ 1710.10 et seq.)*

"In 1974, '[p]artially in response to the constitutional mandate of full faith and credit, the California Legislature enacted the Sister State Money Judgments Act [(the Act)].' [Citations.] The [Act] 'provide[s] economical and expeditious registration procedures for enforcing sister state money judgments in California.' [Citation.]" (*Casey v. Hill* (2022) 79 Cal.App.5th 937, 959-960 (*Casey*).)

" ' "The registration procedure established by the [Act] is designed to allow parties to avoid the normal trappings of an original action, e.g., the necessity for pleadings. The optional procedure was intended to offer savings in time and money to both courts and judgment creditors, yet, at the same time, remain fair to the judgment debtor by affording him the opportunity to assert any defense that he could assert under the traditional procedure." ' [Citation.] 'Upon simple application in conformance with the Act (§§ 1710.15, 1710.20), entry by the clerk of a judgment based upon the

application is mandatory (§ 1710.25), *constituting a ministerial act of the clerk and not a judicial act of the court*.' [Citation.]" (*Casey, supra*, 79 Cal.App.5th at p. 960, italics added.)

The Act provides that once the clerk enters judgment, the judgment debtor may move to vacate the judgment within 30 days of notice of its entry "on any ground which would be a defense to an action in this state on the sister state judgment."[3] (§ 1710.40, subd. (a).) While section 1710.40 does not itemize the possible defenses, the Law Revision Commission's comment to section 1710.40 provides a nonexclusive list of "[c]ommon defenses" to the enforcement of judgments, which " 'may include the following: (1) the judgment is not final and unconditional; (2) the judgment was rendered in excess of jurisdiction; (3) the judgment was obtained by extrinsic fraud; (4) the judgment is not enforceable in the state of rendition; (5) the judgment has already been paid; (6) the plaintiff is guilty of misconduct; or (7) suit on the judgment is barred by the statute of limitations in the state where enforcement is sought.' " (Cal. Law Revision Com. com., 20 West's Ann. Code Civ. Proc. (2007 ed.) foll. § 1710.40, p. 385; *Bank of America, supra*, 77 Cal.App.4th at pp. 114-115.)

B.    *Analysis*

At the outset, we observe that the text of section 1710 et seq. does not answer whether California's lack of personal jurisdiction over a judgment debtor is a viable defense to registering a sister-state judgment under the Act. Although section 1710.40, subdivision (a) allows a judgment debtor to assert any challenge to the judgment that "would be a defense to an action in [California] on the sister state judgment," those defenses "are not well defined." (*Casey, supra*, 79 Cal.App.5th at p. 976.) As noted,

---

[3]    A judgment debtor may challenge a judgment based on a lack of "fundamental jurisdiction" at any time, regardless of the 30-day rule set forth in the Act. (*Airlines Reporting Corp. v. Renda* (2009) 177 Cal.App.4th 14, 19-22 (*Airlines Reporting Corp*).)

they are neither listed in the statute, nor catalogued in the Law Review Commission's comment. As the plain text of section 1710.40 does not answer the question before us, we consider the purpose of the Act, and in doing so, the legislative intent behind its creation. (*People v. Flores* (2003) 30 Cal.4th 1059, 1063 ["The objective of statutory interpretation is to ascertain and effectuate legislative intent"].)

The primary objective of the Act is to "provide a summary method of enforcing a foreign judgment" without requiring the expenditure of time, money, or process of an original action. (*Fishman v. Fishman* (1981) 117 Cal.App.3d 815, 821-822.) Consistent with this goal, entry of judgment under the Act is mandatory and ministerial, requiring no judicial action, nor any pleadings or appearances by the parties. (*Casey, supra*, 79 Cal.App.5th at p. 960; § 1710.25.) Indeed, even a corporation seeking to register a judgment need not retain counsel to do so under the Act. (*Tom Thumb Glove Co. v. Han* (1978) 78 Cal.App.3d 1, 8.) The automatic nature of registration suggests that the Act was intended to create a straightforward enforcement mechanism to allow a judgment creditor to collect a monetary award from a judgment debtor without judicial intervention. Imposing a personal jurisdiction requirement would frustrate this intent by permitting the relitigation of a presumptively valid judgment entered in another forum, and by preventing creditors from collecting on lawfully obtained judgments.

Of course, the Act does contemplate possible judicial intervention insofar as it allows judgment debtors to challenge the enforcement of a sister-state judgment in California through a motion to vacate. (§ 1710.40.) But this language does not open the door for a judgment debtor to raise every defense that might be available in an original civil action filed in California. We explain.

First, as the Act was written as a response to the constitutional mandate of the full faith and credit clause, the principles underlying that provision inform our analysis. " ' "With respect to judgments, 'the full faith and credit obligation is exacting.' [Citation.]" ' " (*Blizzard Energy, Inc., v. Schaefers* (2020) 44 Cal.App.5th 295, 298.)

8

" '[T]he law is well established that upon a claim that a foreign judgment is not entitled to full faith and credit, the permissible scope of inquiry is limited to a determination of whether the court of forum had fundamental jurisdiction in the case.' " (*Washoe Development Co. v. Guaranty Federal Bank* (1996) 47 Cal.App.4th 1518, 1521.) "As long as the sister state court had jurisdiction over the subject matter and the parties, a sister state judgment is entitled to full faith and credit 'even as to matters of law or fact erroneously decided.' [Citation.]" (*Bank of America, supra*, 77 Cal.App.4th at p. 118.) Thus, the full faith and credit clause focuses the registering court's inquiry on whether the original judgment was authorized *in the forum court*. Applying these principles to the Act, California courts have held that they may not relitigate matters already decided in the sister-state. "A California court, in ruling on a motion to vacate entry of a sister state judgment, may not retry the case." (*Blizzard Energy, supra*, at p. 298.) Rather, the Act requires that California must, " 'regardless of policy objectives, recognize the judgment of another state as res judicata.' " (*Silbrico Corp. v. Raanan* (1985) 170 Cal.App.3d 202, 207.) This is true even if " 'the action or proceeding which resulted in the judgment could not have been brought under the law or policy of California.' " (*Ibid.*)

For example, in *Traci & Marx Co. v. Legal Options, Inc.* (2005) 126 Cal.App.4th 155, the Court of Appeal found that the judgment creditor could properly register an Ohio judgment in California, even though it obtained the default judgment in Ohio for an amount in excess of what California law permits. (*Id*. at p. 160.) In doing so, it explained that it was defendants' burden to establish that the *Ohio* court acted in excess of its jurisdiction, or that the judgment was not enforceable *in Ohio*, and that they failed to do so. (*Ibid.*) It reasoned that because California is bound to recognize judgments from other states regardless of whether the action could have been brought under California law, the fact that the judgment was for an amount not permitted by California law was not a basis to vacate the judgment. (*Ibid.*) Accordingly, while judgment debtors may challenge the registration of a foreign judgment under the Act, they may not

9

relitigate matters decided by the original court, including the question of jurisdiction. (*Bank of America, supra*, 77 Cal.App.4th at p. 114.) These constraints are meant to ensure that final judgments are not reopened except in very limited circumstances, and that valid judgments from other states are given full force and effect in California.

Consistent with these principles, courts have found that the *original* court's lack of fundamental jurisdiction over a judgment debtor is a proper defense to assert under section 1710.40. (*Fidelity Creditor Service, Inc. v. Browne* (2001) 89 Cal.App.4th 195, 203 [collecting cases]; *Airlines Reporting Corp., supra*, 177 Cal.App.4th at p. 20.) Similarly, a sister-state judgment rendered in excess of the originating court's jurisdiction is a viable defense under the Act. (Cal. Law Revision Com. com., 20 West's Ann. Code Civ. Proc. (2007 ed.) foll. § 1710.40, p. 385.) This is because where a court lacks authority to adjudicate the controversy before it, any resulting judgment is void (where the court lacked fundamental jurisdiction) or voidable (where the court acted in excess of jurisdiction.) (*Airlines Reporting Corp.*, at p. 20.) It follows that where the original court lacked jurisdiction over the judgment debtor, the judgment is unenforceable *ab initio* and cannot be enforced in California.

The analysis is different, however, where the originating state had jurisdiction over the parties. In that scenario, the parties received due process in the original action that resulted in the judgment being registered. Thus, even where California lacks personal jurisdiction over the judgment debtor, the judgment debtor's due process rights are not implicated by registration of the sister-state judgment under the Act.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' [Citations.]" (*Mathews v. Eldridge* (1976) 424 U.S. 319, 333 [47 L.Ed.2d 18, 32].) The due process protections afforded to litigants through the personal jurisdiction requirement, and specifically the requisite "minimum contacts," are intended to protect litigants from "the burdens of litigating in a

10

distant or inconvenient forum." (*World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 291-292 [62 L.Ed.2d 490, 497-498].)

Where, as here, a judgment debtor has had the action fully adjudicated in a court of competent jurisdiction, the debtor's due process rights are not infringed by the Act's registration process, even where personal jurisdiction in California might be lacking. At the time of registration, the Nevada case had already reached judgment, and the sister-state's findings—even if erroneous or inconsistent with California law—are binding on California courts. (*Ruddock v. Ohls* (1979) 91 Cal.App.3d 271, 279 ["if the original court rendering the judgment had jurisdiction, an error of law or fact by that court generally cannot be raised in a collateral attack on the judgment"].) The registration process is ministerial. It does not alter the judgment; it merely enables a creditor to collect on a preexisting judgment. Thus, so long as the *originating* state had jurisdiction over the parties, the judgment was authorized, and the litigants were afforded due process, there is no basis to read an additional jurisdictional requirement into the Act based upon the ministerial act of registration.[4]

---

[4] We are not persuaded by Mynarcik's statutory interpretation arguments. First, citing section 1710.35, he contends that because any foreign judgment registered in California would have "the same effect as the original money judgment of the court," and an original money judgment from California would have no effect where California lacked personal jurisdiction over the parties, it follows that personal jurisdiction in California is required for a domesticated judgment to take effect under the Act. However, as discussed, foreign judgments are enforceable in California even where the original lawsuit could not have been brought under California law. Thus, we do not read the statute to require that all registered judgments must be reached in full compliance with California law, including its jurisdictional requirements, to take effect.

Mynarcik also cites section 1710.40, which states that a judgment entered under the Act "may be vacated on any ground which would be a defense to an action in this state on the sister state judgment." He asserts that because a California defendant could assert California's lack of personal jurisdiction as a defense to a judgment "in an action in this state," it is a viable defense under the statute. But again, the Act does not permit the

In reaching this conclusion, we find the Ninth Circuit's rationale in *Fidelity National Financial, Inc. v. Friedman* (9th Cir. 2019) 935 F.3d 696 (*Fidelity National*), relied on by Jumpstart, to be persuasive. In *Fidelity National*, the Ninth Circuit considered whether personal jurisdiction over the judgment debtors in the district of registration was required to register a foreign judgment under the federal counterpart to the Act, section 1963 of title 28 of the United States Code. (*Fidelity National, supra*, at p. 698.) It found that neither the statute nor due process imposed a personal jurisdiction requirement for the act of registration. (*Ibid*.) In so concluding, it noted that registering the federal judgment did not involve " 'maintenance of a suit' " or otherwise implicate due process concerns, because the judgment debtor had already received due process in the original action, and registration was a purely administrative act meant to facilitate collection of the preexisting judgment. (*Id*. at pp. 701-702.) Although section 1963 of title 28 of the United States Code, unlike the Act, does not expressly allow defenses to registration, debtors are nonetheless permitted to raise some. (See, e.g., *Radiation Technology, Inc. v. Southern Rad, Inc.* (N.D.Ga. 1975) 68 F.R.D. 296, 300 [Georgia court had authority to hear collateral attack on New Jersey judgment based on lack of personal jurisdiction in New Jersey].) The same considerations apply here and compel the same result.[5]

The original judgment obtained by plaintiffs was valid and enforceable in Nevada when it was registered in California. The Nevada court had jurisdiction over Mynarcik. We see no reason, then, why this validly obtained judgment could not be registered in

judgment debtor to raise unlimited defenses or relitigate matters already decided in the originating court.

[5]     We further note that the case primarily relied upon by Mynarcik, *Airlines Reporting Corp.*, is plainly distinguishable. In *Airlines Reporting Corp., supra*, 177 Cal.App.4th 14, the appellate court found that the original judgment was void for lack of personal jurisdiction, and the court did not address the question of personal jurisdiction in California.

California simply because one or more debtors lack minimum contacts with this state. The Act does not require it; indeed, its text and application indicate that it was not the Legislature's intent to impose such a constraint. Moreover, the ministerial act of registration does not "alter[ ] a debtor's substantive rights such that a due process right is triggered." (*Fidelity National, supra*, 935 F.3d at p. 702.)

As California's lack of personal jurisdiction over Mynarcik was not a viable defense to registering the Nevada judgment in California, we reverse the trial court's ruling granting Mynarcik's motion to quash the 2010 California judgment and the renewed 2020 California judgment.

## DISPOSITION

The ruling of the trial court is reversed. Jumpstart shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

          KRAUSE        , J.

We concur:

    HULL        , Acting P. J.

    EARL       , J.

13